[No. A031745. First Dist., Div. Two. Apr. 22, 1987.]

PACIFIC GAS AND ELECTRIC COMPANY, Plaintiff and Respondent,
v.
DAMÉ CONSTRUCTION COMPANY, INC., Defendant and Appellant.

234

**COUNSEL**

Michael W. Rupprecht, William W. Bassett, Victor J. Conti and Thiessen, Gagen & McCoy for Defendant and Appellant.

Robert L. Bordon, Bernard J. Della Santa and David W. Anderson for Plaintiff and Respondent.

**OPINION**

**KLINE, P. J.**—This appeal arises from a dispute between Pacific Gas and Electric Company (PG&E) and Damé Construction Company, Inc. (Damé)

over liability for costs incurred in the relocation of certain electrical power poles. The trial court found Damé responsible for these costs and ordered it to pay PG&E $19,542. We shall affirm the judgment.

## STATEMENT OF FACTS

Damé, a private land development company, owned 417 acres immediately west of and adjacent to San Ramon Valley Boulevard in Contra Costa County. Damé sought approval of a plan to subdivide its land and construct 715 homes. The Contra Costa Board of Supervisors granted its approval upon numerous conditions, one of which required Damé to widen that portion of San Ramon Valley Boulevard immediately adjacent to the site of the proposed development. PG&E owns and maintains an electric distribution line on that road. In the stipulation of facts submitted below the parties agreed that neither the board of supervisors nor any other local government agency specifically required Damé to relocate the PG&E power poles and lines.

When PG&E became aware of Damé's development plans it notified Damé that it would move the affected electrical poles, provided that "such change [would] be made only at the expense of the person making such request."

On July 8, 1980, the Contra Costa County Public Works Department sent a letter to PG&E requesting PG&E to "make arrangements" to relocate its power poles in accordance with the attached plans. Thereafter, on five separate occasions, PG&E sought an acknowledgement from Damé that it would reimburse PG&E for its relocation expenses. Damé refused to accept liability.

During the latter part of 1982 Damé completed the road widening, which left poles and electrical lines in the middle of the newly paved street. On or about October 1982, PG&E moved its poles at a cost of $19,542. As a result of Damé's continued refusal to pay for this work PG&E commenced this action on January 26, 1983.

## STATEMENT OF THE CASE

After answering PG&E's complaint, Damé moved for summary judgment, arguing it was protected by a rule holding utilities responsible for the cost of relocating equipment due to the proper governmental use of the land on which the equipment is located. The court denied the motion.

The matter was submitted for decision based on the parties' stipulated facts, the evidence submitted in support of and in opposition to the summary judgment motion and additional declarations submitted by Damé.

The court issued written findings on the specified " 'controverted issues.' " In particular, it noted that while the general public might receive some incidental benefit from the improvements on San Ramon Valley Boulevard, the "principal beneficiary" of this work was Damé, which was permitted to develop its property only after agreeing to widen the road. The court concluded that utility relocation costs incidental to a private land improvement project should be borne by the private developer which benefited from that project. Accordingly, it entered judgment for PG&E and against Damé. Damé filed a motion for new trial, which was denied.

DISCUSSION

■ Damé's entire argument is based on the common law rule that a franchised utility must bear its own costs of relocation when requested to move its equipment by an authorized governmental agency. Damé maintains that in the absence of express statutory authority—which PG&E admits is lacking here—a utility cannot shift this obligation to others, even where a private developer undertakes the improvements that make the equipment relocation necessary. This apparently is a question never before directly addressed by the appellate courts of this state.

It is true that at common law and, in California, by statute (Pub. Util. Code, § 6297) utilities must bear the costs of relocating equipment moved at the request of a municipality. However, by its own terms, that rule does not apply to a dispute between a utility and a private developer. Moreover, if the policy behind that rule in any way applies to this situation, it militates in favor of allocating the cost of relocation to Damé.

According to the common law rule, "in the absence of a provision to the contrary, a public utility's franchise rights in a public street are subject to an implied obligation to relocate its facilities at the utility's own expense when necessary to make way for a proper governmental use of the street. [Citations.]" (*Pacific Tel. & Tel. Co.* v. *Redevelopment Agency of Redlands* (1977) 75 Cal.App.3d 957, 962 [142 Cal.Rptr. 584]; accord, *Pacific Tel. & Tel. Co.* v. *Redevelopment Agency of Glendale* (1978) 87 Cal.App.3d 296, 299 [151 Cal.Rptr. 68]; see also 12 McQuillin, Law of Municipal Corporations (3d ed. rev. 1986) § 34.74a [utilities must pay for relocation when changes "are required by public necessity"].) This rule has been codified in Public Utilities Code section 6297: "The grantee [of a utility franchise] shall

remove or relocate *without expense to the municipality* any facilities installed, used, and maintained under the franchise if and when made necessary by any lawful change of grade, alignment, or width of any public street, way, alley, or place, including the construction of any subway or viaduct, *by the municipality.*" (Italics added.)

It is apparent from the cited authorities that the utility's obligation arises only when relocation is made necessary by a valid governmental act. This rule has been explained by the fact that "at the time of framing the franchise [agreement] there existed the possibility that an exercise of the police power could force relocation. This fact contributes to a contract construction whereby an implied term in the franchise is raised that the utility will bear the costs." (Note, *Municipal Corporations: Extraterritorial Power: Determination of Who Should Bear the Expense of Relocation of Private Utility Lines* (1959) 6 UCLA L.Rev. 336, 337, fn. omitted.) The rule and the noted justification are of dubious relevance to situations in which the relocation is made necessary by private development not initiated by any governmental agency.

As section 6297 makes clear, the purpose of the rule is to insulate the government and, consequently, taxpayers, from such expenses: the statutory language explicitly provides that relocation be accomplished "without expense to the municipality." Courts have emphasized that this rule cannot easily be avoided by judicial construction because "[i]t is for the Legislature to decide whether [relocation] expenses should be shifted *to the taxpayers.*" (*Pacific Tel. & Tel. Co., supra,* 75 Cal.App.3d at p. 968, italics added.) In the instant case analogous reasoning favors the imposition on Damé of liability for the costs to protect PG&E's ratepayers, who are comparable to taxpayers, from having to bear the burden.

Damé attempts to bring this situation within the scope of the general rule by arguing that the road widening must be treated as a governmental act, despite the fact that it was accomplished and financed by Damé, a private developer. According to Damé, it is a common practice for local governments to impose conditions on developers requiring various work to be done as a means of obtaining public improvements at private expense. Even if this is so, however, it only provides an economic explanation for the county's motive in imposing the conditions on Damé. The fact remains that Damé's construction of hundreds of houses adjacent to and near the portion of San Ramon Valley Boulevard in issue contributed to the need for widening that portion of the road, and the work was performed and paid for by Damé, not the county. Under these circumstances, to characterize Damé's work as a "governmental act" would stretch the meaning of the phrase far beyond common understanding. We decline to do so.

We are also unpersuaded by the related argument that Damé "merely" assumed responsibility for a public improvement the county would otherwise eventually have had to undertake and should therefore stand in the shoes of the government, which does not have to bear the costs of utility location. Even indulging the unproven factual predicate of this argument, the private development at least accelerated the need for the public improvement, thereby providing the nexus which justifies imposition of all of the costs thereof on the developer.

Finally, Damé claims that the critical factor is that the county requested PG&E to move the poles. This fact, Damé maintains, brings the case within the United States Supreme Court's understanding of the common law rule, that is, that utilities must pay for relocation "whenever *requested* to do so by state or local authorities." (*Norfolk Redev. & Housing Auth.* v. *Chesapeake & Potomac Tel. Co.* (1983) 464 U.S. 30, 35 [78 L.Ed.2d 29, 34, 104 S.Ct. 304], italics added.) Damé's position is founded upon a misinterpretation of the Supreme Court's language which places far too much emphasis on the actual request to perform the work. The fact that the county's request was directed to PG&E and not Damé does not bear significantly on the question of which should be made responsible for paying for the work. The county likely issued the request to the utility company simply because it installed and maintained the equipment. In our opinion, the absence from that written request of any mention of who should bear responsibility for the cost of relocation is at least as important as the mere fact that the request was directed to PG&E.

Having determined that the common law rule is inapplicable, we must look to related areas for guidance.

We look, first, to the so-called "benefit" cases. These cases all deal with the question of which of two public entities should assume responsibility for relocation of utility facilities. In *County of Contra Costa* v. *Central Contra Costa Sanitary Dist.* (1960) 182 Cal.App.2d 176 [5 Cal.Rptr. 783], a sewer owned by a sanitary district was relocated by the county at the flood control district's request. The county, acting on behalf of the flood control district, sued the sanitary district for the cost of moving the sewer line. The appellate court affirmed the trial court's denial of reimbursement, stating " '[t]he cost of relocation should not be borne by the taxpayers of the County generally nor by the taxpayers of the Sanitary District, but rather by the people resident within the Flood Control zone benefited by the improvement.' " (182 Cal.App.2d at pp.179-180, quoting with approval the lower court's memorandum of decision.)

One well-known commentator has noted that this decision provides "the basis for an equitable solution" to the utility relocation dilemma. (Van Alstyne, *Governmental Tort Liability: A Public Policy Prospectus* (1963) 10 UCLA L.Rev. 463, 502.) Van Alstyne explains that in the Contra Costa County case "[n]o relocation expense would have been incurred at all had it not been for the new improvement being constructed by the Flood Control District for the benefit of its residents. The most equitable way to distribute the loss is thus to require the Flood Control District to assume it, thereby passing it on to its taxpayers who are the beneficiaries of the loss-producing activity." (*Ibid.*)

This benefit analysis again was used to determine the proper allocation of costs in *Northeast Sacramento etc. Dist.* v. *Northridge Park etc. Dist.* (1966) 247 Cal.App.2d 317 [55 Cal.Rptr. 494]. In that case, a sanitation district expanded its facilities, which required the relocation of water mains belonging to a water district. In considering who should bear the cost of moving the water mains the court emphasized that the water district's lines were first in place and should be given priority. It held the sanitation district was required to pay the costs of relocating the other district's water mains, noting that, "[e]ach district herein involved comprises a separate group of people who will benefit and should be burdened only by the building and maintenance of its own public works. Why should the taxpayers [in the water district] be taxed to pay the costs of a sewerage disposal system which does not benefit them? Why should the taxpayers [in the sanitation district] receive a free ride for this not inconsiderable item of expense in the building of said sewerage system?" (*Id.,* at p. 321; see also *City of Los Angeles* v. *Metropolitan Water Dist.* (1981) 115 Cal.App.3d 169, 174-175 [171 Cal.Rptr. 217], quoting with approval the noted portions of *County of Contra Costa* and *Northeast.*)

The benefit analysis applied in the foregoing cases seems to us a fair and sensible method of cost allocation. As applied to the facts of the present case it supports the judgment of the trial court regardless whether the beneficiary is deemed to be the developer or a segment of the public.[1] ▆ The

---

[1]We do not agree with Damé that the recent case of *Pacific Gas & Electric Co.* v. *City of San Jose* (1985) 172 Cal.App.3d 598 [218 Cal.Rptr. 500], in which the court rejected PG&E's attempt to impose on those benefited the cost of its relocation expenses, applies here.

In that case three special assessment districts were created to help fund improvement projects which ultimately required PG&E to relocate certain of its equipment. PG&E sought partial reimbursement from the assessment districts which benefited from the utilities. The trial court sustained the demurrers of respondent cities San Jose and Mountain View. In affirming that judgment the Court of Appeal rejected PG&E's argument that the creation of the special assessment districts designated a limited population which would benefit from the improvements and, thus, should help finance the attendant utility relocation costs.

Damé's reliance on this case overlooks the fact that the city initiated, performed and partly financed the work. *City of San Jose* does not apply where, as here, the private developer agreed to perform and finance the improvements in question in order to meet a requirement imposed by the county as a condition of private development.

evidence amply supports the trial court's finding that while the general public would also benefit from the road widening, the primary beneficiary of the work was Damé, which would not have been permitted to develop its land without agreeing to widen the adjacent boulevard. Since Damé presumably enjoys the economic opportunity that the development represents, it seems proper that it should also bear the attendant costs. Although Damé claims the county planned to widen the road prior to Damé's appearance on the scene, the evidence does not demonstrate that the road improvement would have been done if Damé's development project had not been approved.[2]

Allocation of the cost to Damé would be justified even if, as Damé sees it, the public is considered the main beneficiary of the improvement. The members of the public who will benefit most from the road widening will be those who reside closest to it and most regularly contribute to traffic upon the widened segment. As it appears most of these persons will be living in houses purchased from Damé, Damé is able to and almost certainly will pass on the costs of the improvement, including the expense of relocating the poles, to these residual beneficiaries.

We think it pertinent that in a case factually similar to the one before us, the California Public Utilities Commission has determined that the private developer and not the utility should bear the utility's relocation costs. (*Sunrise Oasis Estates* v. *Southern California Gas Co.* (January 24, 1978) Dec. No. 88398.)[3] In *Sunrise Oasis,* the city required the developer, as a condition of approval of his subdivision, to pave an adjacent public street and install curbs, gutters and sidewalks. Grading by the developer damaged the public utility's underground natural gas line and diminished the ground cover over it, creating a hazardous condition. The utility lowered the gas line to remove the hazard, repaired it, and requested reimbursement for the cost of relocation. The commission ordered the developer to pay for this relocation because it was done to enable the developer to meet the conditions

[2]The trial court found that Damé's evidence on this issue, offered in the form of a written declaration, was excludable as hearsay. The court did observe, however, that if it had been admissible, it would not have been dispositive.

[3]The Public Utilities Commission has jurisdiction over complaints alleging a violation of "any provision of law or of any order or rule of the commission." (Pub. Util. Code, § 1702.) The PUC had jurisdiction in *Sunrise Oasis* because a complaint was filed before the Commission seeking to have the utility repair the allegedly ultrahazardous condition of the underground natural gas line which apparently violated an order of the commission. The commission would have had concurrent jurisdiction to resolve the instant claim if the situation had been reversed and Damé had paid the relocation costs and then sought reimbursement from PG&E pursuant to Public Utilities Code section 6297. We therefore believe the commission, which has concurrent statutory authority to decide relocation cost disputes which are prosecuted by a private party against a utility, has expertise relevant to the determination of the issue before us.

imposed by the city. The commission distinguished the case from one in which the city itself, not the developer, performed the roadwork.

Although, as appellant correctly notes, the Public Utilities Commission's decisions are not binding on us, we may look to these rulings for assistance when deciding cases involving issues that also come before the commission. The commission's decision in *Sunrise Oasis,* involving facts nearly identical to those presented here, certainly provides persuasive support for our conclusion that Damé should shoulder the burden of PG&E's relocation costs.

Finally, we are convinced it is economically and otherwise fair that Damé bear these costs because it had reason to anticipate it would have to do so. Paragraph 8 of the subdivision agreement[4] between Damé and Contra Costa County[5] provides that Damé "shall pay when due, *all costs of the work,* including inspections thereof and *relocating existing utilities required* thereby." (Italics added.) Damé now claims this language only applied to work within the subdivision and never was intended to include the work on San Ramon Valley Boulevard. This argument is meritless. The agreement itself specifically defines the "work" referred to in paragraph 8 to include the anticipated road improvements on San Ramon Valley Boulevard. In sum, a fair reading of the subdivision agreement at least should have put Damé on notice as to its potential liability for the utility relocation costs; at that point it could have determined the economic feasibility of going forward with its plans in light of this additional expense. On the other hand, PG&E

---

[4]The parties have attached several documents to their briefs and requested us to take judicial notice of these papers pursuant to Evidence Code section 452, subdivisions (c) and (h).

Subdivision (c) provides we may take notice of "Official acts of the legislative, executive, and judicial departments of the United States and of any state of the United States." More generally, subdivision (h) allows us to take judicial notice of "Facts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy."

We have concluded that respondent's Exhibit B, consisting of the subdivision agreement, the Contra Costa County Board of Supervisors resolution approving the agreement and a related improvement security bond, is highly pertinent to a full and intelligent discussion of the issue raised herein. These documents, presented to us as a certified copy of the documents accepted by the Contra Costa County Board of Supervisors, more than meet the statute's requirement of reliability. Because of these factors, we have taken judicial notice of these items.

We reject the parties' requests to take judicial notice of the numerous other documents they have presented to us either because they are of dubious relevance to the issue confronting us or because we cannot say the facts presented therein are "not reasonably subject to dispute," as required by Evidence Code section 452, subdivision (h).

[5]Because PG&E is not a party to this agreement the contract is not dispositive of the conflicting rights and obligations of PG&E and Damé. Nonetheless, it directly bears on the equities of this case since it clearly shows Damé should have expected it might be liable for the utility relocation costs.

had no part in the negotiation of the subdivision agreement and had no opportunity to prevent the movement of its utility poles.

■ For the foregoing reasons, we hold that where a private party, on its own initiative and not that of government, develops a parcel of land and thereby creates or aggravates a need for a public improvement which requires the relocation of existing utility equipment, the private party shall bear the necessary relocation costs.

The judgment is affirmed. Each party to bear its own costs on appeal.

Rouse, J., and Smith, J., concurred.