HOME BUILDERS ASSOCIATION OF
GREATER ST. LOUIS, et al.,
Appellants,

v.

ST. LOUIS COUNTY WATER
COMPANY, Respondent.

No. 56133.

Missouri Court of Appeals,
Eastern District.

Dec. 26, 1989.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 24, 1990.

Application to Transfer Denied
March 13, 1990.

David J. Newburger, Newburger &
Vossmeyer, St. Louis, for appellants.

Richard T. Ciottone, David P. Abernathy,
St. Louis, for respondent.

HAMILTON, Presiding Judge.

Appellants, Home Builders Association of Greater St. Louis (hereinafter HBA) and five developers (hereinafter Developers), filed a declaratory judgment action against St. Louis County Water Company (hereinafter the Water Company) to determine whether each individual Developer or the Water Company must incur the cost of relocating the latter's facilities necessitated by construction of a particular project of each Developer. The trial court ruled in favor of the Water Company. HBA and Developers appeal. We affirm.

HBA is a Missouri not-for-profit corporation whose purpose is to serve, advance, and protect the residential and light construction industry in the St. Louis metropolitan area and in seven adjacent counties. The five Developers are each engaged in construction projects in St. Louis County. Delmar Gardens Enterprises, Inc. (hereinafter Delmar Gardens) is constructing a skilled care facility for the elderly. Keller Plaza, Ltd. (hereinafter Keller), a limited partnership, is building a shopping center. Kingsway Homes, Inc. (hereinafter Kingsway) is erecting condominiums. RGB Construction Company (hereinafter RGB) and Suntide, Inc. (hereinafter Suntide) are each constructing subdivisions of single-family dwellings.

The Water Company, a Missouri corporation, is a public utility regulated by the Missouri Public Service Commission. It provides water service to St. Louis County and to certain customers in Jefferson County, Missouri. In operating its business, the Water Company has installed by way of license certain facilities such as water transmission mains, distribution piping, valves, and fire hydrants in publicly-owned rights-of-way.

The Water Company accepted and holds a perpetual franchise granted in 1902 by court order from St. Louis County, giving it the right to lay and maintain its water main and pipes across the public highways of St. Louis County. In addition, the Water Company has a franchise agreement with the City of Creve Coeur which granted it a franchise in 1977 under Ordinance

No. 787 for a period of twenty years. Section 2 of Ordinance No. 787 provides that no "person or corporation [shall] be permitted or granted the right to interfere in any way with any of the rights granted hereunder to the Company." By this language the City of Creve Coeur recognized that the Water Company has a right to place its facilities in public rights-of-way, and no private parties can interfere with this right. No Appellants are parties to the franchise agreement with either St. Louis County or the City of Creve Coeur.

In connection with its project, each Developer has agreed to perform improvements upon the roadway that abuts or is in the vicinity of that project. Such roadway improvement has required, or will require, the relocation of facilities that are located in public rights-of-way and that are owned and operated by the Water Company.

The Water Company's facilities associated with the Delmar, RGB, and Suntide projects are located in St. Louis County public rights-of-way. Its facilities associated with the Keller project are located partly in St. Louis County public rights-of-way and partly in State public rights-of-way. Its facilities associated with the Kingsway project are located in public rights-of-way in the municipality of Creve Coeur.

For many years, the Water Company, private developers, and governmental authorities have disagreed about which one of them should bear responsibility for costs associated with relocation of the former's right-of-way facilities. The Water Company has denied any legal obligation to pay costs of relocation caused by private development. Private developers and HBA have contended that to require private developers to pay costs of relocation as a condition of their being permitted to complete their development projects is unlawful. Some governmental authorities have taken no position in this disagreement while others have asserted that the Water Company is legally obligated to pay the costs of such relocation.

Against the backdrop of this disagreement, the Water Company implemented a policy regarding payment of costs for relo-

cation of its right-of-way facilities. If the relocation of such facilities were made necessary by improvements to the public right-of-way with public funds, unrelated to private activities and interests, the Water Company would pay all costs of necessary relocations. If, however, a private developer requested relocation of Water Company's right-of-way facilities, made necessary by improvements to a public right-of-way being undertaken by that private developer, whether because of an exaction by local government or otherwise, the Water Company followed one of three procedures. First, if written demand were provided from a local government to the Water Company indicating that relocation was being ordered at the latter's expense, the Water Company would, in most instances, perform and pay the costs of relocation, so long as, in its judgment, the right-of-way improvement were not primarily to improve private property. Second, if written demand were provided from a local government to the Water Company indicating that relocation was being ordered at the latter's expense, the Water Company would refuse to perform the relocation absent reimbursement from the developer, if, in the Water Company's judgment, the right-of-way improvement were primarily to improve private property. Third, if no written demand were provided from the local government to the Water Company indicating that relocation was being ordered at the latter's expense, the Water Company would refuse to perform the relocation absent reimbursement regardless of the nature of the right-of-way improvement.

In 1987, the Water Company became aware of an opinion of the California Court of Appeals, *Pacific Gas & Elec. Co. v. Damé Constr. Co., Inc.*, 191 Cal.App.3d 233, 236 Cal.Rptr. 351 (1987). Based upon the *Damé* decision, the Water Company decided henceforward to refuse to relocate its right-of-way facilities unless compensated by a developer, if the need for such relocation were necessitated by the developer's private activities and interests.

The Water Company has informed each of the Developers that it declines to relo-

cate its public right-of-way facilities associated with that Developer's project unless and until that Developer agrees to pay the costs of such relocation as a contribution in aid of construction and, in support of this agreement, to make a cash deposit with the Water Company. Four of the five Developers have made deposits under protest.[1]

The appropriate governmental authorities have required each Developer to complete specified road improvements associated with its particular project as a condition to obtaining permission to construct that project. These road improvements cannot be completed without relocation of certain of the Water Company's right-of-way facilities. While these authorities have intended either to complete these road improvements or to have them completed when feasible, they have not intended to do the work using public resources at the time each Developer was undertaking its project. Some of these authorities planned to require developers to complete road improvements adjacent to their projects without public resources. Thus, no improvements were anticipated for those roads unless and until the property fronting on them was developed. Other authorities plan eventually to undertake the road improvements using public resources. They do require a developer, however, to complete the road improvements in the event it develops its property earlier than the road improvements were scheduled to be done by the authority.

The road improvements required of the Appellant Developers are expected to be used by the owners, lessees, customers, and residents of the Delmar, Keller, Kingsway, RGB, and Suntide projects. Indeed, the State Highway Commission, St. Louis County, and the City of Creve Coeur have taken the position that an exaction requiring each of the Developers to construct these right-of-way improvements is justified because they are reasonably related to each Developer's project. No Developer has objected that such exaction was unlawful. Moreover, the particular road im-

provements at issue have made relocation of the Water Company's right-of-way facilities necessary.

In view of the Water Company's change in policy following the *Damé* decision, HBA and the Developers brought a declaratory judgment action in circuit court to determine whether the Water Company or Developers would be responsible for the costs of relocating the former's right-of-way facilities. Upon stipulated facts, the trial court granted summary judgment in favor of the Water Company. This appeal followed.

The sole issue on appeal is whether the trial court erred in granting summary judgment in favor of the Water Company. HBA and Developers contend the trial court erred in holding that Appellant Developers must pay the costs of relocation of the Water Company's facilities in public rights-of-way associated with their projects because (1) the common law rule and relevant Missouri statutes require the Water Company to bear these expenses; (2) the relocations at issue are necessitated by a valid governmental act, thereby obligating the utility to pay costs; (3) the *Damé* decision is not controlling because it is inconsistent with Missouri law; and (4) fairness requires the utility pay the costs of relocation.

The common law rule in Missouri with respect to franchises in roadways is that a

> utility company must relocate its facilities in public streets when changes are required by public necessity ..., [or] public convenience [and] security require it ... at ... [its] own expense.... [But] [t]he general rule that the utility must bear the relocation costs has been held inapplicable where the relocation of its facilities has been necessitated by the municipality's exercise of a proprietary rather than a governmental function or purpose.

*Union Elec. Co. v. Land Clearance for Redevelopment Auth.*, 555 S.W.2d 29, 32

---

1. Due to a dispute not material to this case, RGB has made no deposit. The remaining four Developers have made deposits in the following amounts: Delmar Gardens Enterprise, Inc., $6,741.11; Keller Plaza, Ltd., $15,741.97; Kingsway Homes, Inc., $3,600; Suntide, Inc., $5,364.

(Mo. banc 1977), citing *McQuillan Mun. Corp.*, § 34.74a (3rd ed.) pp. 183–84.

Missouri has several statutes applicable to utility relocation. Section 227.240 RSMo.1986 [2] empowers the State Highway Commission to regulate utility facilities within the right-of-way of any state highway:

> [utility facilities] within the right of way of any state highway, insofar as the public travel and traffic is concerned, and insofar as the same may interfere with the construction or maintenance of such highway, shall be under the control and supervision of the state highway commission.

§ 227.240.1. Upon notice from the state highway commission, a utility must move its facilities, at its expense, if the facilities interfere with the construction or maintenance of any state highway.[3] § 227.240.2. Thus, this section essentially tracks the common law rule.

Section 229.300 governs excavations in roads by utility companies in first class counties.[4] It provides that a utility, before excavating or encroaching upon or before laying, locating, erecting, removing, or maintaining its facilities in a public right-of-way, outside the city limits of a municipality, must first obtain a special use permit from the county highway engineer and surveyor. Sections 229.350 and 229.360 [5] address the relocation of a utility's facilities within a first class county. Section 229.350 states, in pertinent part, that if

> it shall become necessary because of a change in the grade or for any other purpose whatsoever made necessary by reason of the widening, improving, repairing, construction, reconstructing, or maintaining of any street, avenue, boulevard, road, alley, public easement, highway, bridge or culvert *by any lawful authority* to lower, raise, remove,

change or alter in any manner the location or maintenance of [utility facilities] ... the county highway engineer and surveyor shall give [the owners] ... notice of the time and place [of the removal and relocation].

(Emphasis added). Section 229.360 provides in part that

> [i]t shall be the duty ... [of the owner of the utility], after service of the notice required in section 229.350 to furnish such competent workmen and crews as may be necessary to effect such removal, change or alteration, and to pay all actual expenses which are incurred [in the removal or relocation] ...

In its order, the trial court construed the phrase "by any lawful authority" in Section 229.360 to mean a governmental act. Thus, it held that

> [t]he common law general rule regarding utility facilities within public rights-of-way states that licensees within public rights-of-way must relocate facilities at their own costs when necessary to accommodate rights-of-way improvements; but this rule also requires both that the right-of-way improvement necessitating the relocation must be made necessary by the actions of a governmental entity, and that the actions of the governmental entity must accomplish a purely governmental purpose. If the project necessitating the right-of-way improvement does not involve a "governmental act," (which is synonymous with an act of a "lawful authority" referred to in Chapter 229 of the Missouri Statutes) or if the governmental act is the development of a project for which the purpose is proprietary rather than governmental, the general rule does not apply.

Appellants contend the trial court erred in finding "lawful authority" synonymous with "governmental act." They apparently

---

**2.** All statutory references are to RSMo 1986 unless otherwise indicated.

**3.** Section 227.240 applies only to the Keller project in the present case.

**4.** In their stipulation of facts, the parties have agreed that certain of the Water Company's facilities are located in St. Louis County public

rights-of-way pursuant to Sections 229.300 through 229.370. Thus, by implication, they have acknowledged that St. Louis County is a first class county.

**5.** Sections 229.350 and 229.360 apply to all projects in the present case except Kingsway.

interpret "lawful authority" simply to mean "lawful." Under their interpretation, the utility would have to pay its own relocation costs, provided the entity (whether public or private) that undertook the right-of-way improvements had done so legally. Such a construction would permit a developer to shift the cost of utility relocation onto the utility. Appellants further contend that the road improvements demanded from them by local governmental authorities are exactions imposed by those authorities to accomplish a governmental purpose and that, by completing these road improvements, the Developers are performing a governmental act. Therefore, the Water Company must pay for relocation of its facilities.

We disagree with the foregoing contentions. The common law rule and Missouri statutes do not require the Water Company to bear the costs of its facility relocation under the circumstances presented in this case. Nor are the Developers performing a valid governmental act by completing the road improvement, which thereby obligates the Water Company to pay relocation costs.

Developers erroneously seek to equate governmental purpose with governmental action. The trial court, however, correctly recognized the distinction between them. It thus held that a utility within a public right-of-way must relocate its facilities at its own cost when the right-of-way improvement necessitating the relocation is made necessary by the actions of a governmental entity and those governmental actions accomplish a purely governmental purpose.

In the instant case, the actions of private developers constructing their projects, not the actions of a governmental entity, have caused the need for right-of-way improvements and have, in turn, necessitated water facility relocations. Absent these private actions, the road improvements and consequent facility relocations would not occur at this time or perhaps at any time. While the right-of-way improvements incidentally

accomplish a public purpose, they primarily accomplish private sector purposes, that is, providing convenience and security to owners, lessees, customers, and residents of the Developer's projects.

Moreover, contrary to Appellants' position, this case fails to present a situation in which a public entity is exercising its police power to make road improvements necessitating facility relocations. Governmental entities did exercise their police power to impose exactions, or conditions, upon the Developers that required them to construct certain public right-of-way improvements in order to complete their projects.[6] Exactions on the use of private property, such as these, are thus akin to zoning restrictions on the use of private property. Zoning restrictions, however, generally limit only the use of private property while exactions impose a penalty, in the form of conditions, for approval of a desired use. See *State ex rel. Noland*, 478 S.W.2d at 366. An exaction, therefore, may or may not generate further action. If it does generate action, it is action by the owners of the property in question who choose to accept and to meet the conditions imposed in order to realize their desired use of the property. If no action is taken, then the property owners refuse to accept the conditions. Those conditions will remain unfulfilled and the owners' desired use of the property unrealized. In either case, the exaction generates no acts by a governmental entity. Thus, by complying with exactions, property owners, such as Developers, are performing no governmental acts.

The issue of cost allocation presented in this appeal was addressed by the California Court of Appeals in *Pacific Gas & Elec. Co. v. Damé Constr. Co.*, 191 Cal.App.3d 233, 236 Cal.Rptr. 351 (1987). In that case, Damé Construction Company (hereinafter Damé) sought county approval of its plan to subdivide and construct homes on 417 acres of its land. The county approved the development contingent upon numerous conditions including a requirement that

6. None of the parties here contends that these exactions lack a reasonable relationship to each Developer's project. See *State ex rel. Noland v.*

*St. Louis County*, 478 S.W.2d 363, 366–68 (Mo. 1972).

Damé widen a portion of the street adjacent to the proposed development. The street widening necessitated relocation of certain power poles and lines belonging to Pacific Gas & Electric Company (hereinafter PG & E) and located on the street. No governmental agency specifically required Damé to undertake relocation of the electrical facilities although the County Public Works Department sent a letter to PG & E requesting it to make arrangements to relocate its power poles. The pertinent statutory section provided that the "grantee [of a utility franchise] shall remove or relocate *without expense to the municipality* any facilities installed, used, and maintained under the franchise if and when made necessary by any lawful change of grade, alignment, or width of any public street ... *by the municipality*." Cal.Pub.Util.Code § 6297 (West 1965 and Cum. Pocket Part 1989) (emphasis added). PG & E sought reimbursement from Damé for the cost of the relocation.

In affirming the trial court's summary judgment in favor of PG & E, the court of appeals held "that where a private party, on its own initiative and not that of government, develops a parcel of land and thereby creates or aggravates a need for public improvement which requires the relocation of existing utility equipment, the private party shall bear the necessary relocation costs." *Damé*, 191 Cal.App. at 241, 236 Cal.Rptr. at 357.

To reach its holding, the *Damé* court recognized that the common law rule which, in California, has been codified in Section 6297 of the Public Utilities Code, is inapplicable to determining the allocation of facility relocation costs between a utility and a private developer. 191 Cal.App.3d at 236, 236 Cal.Rptr. at 353. That rule obligates a utility to bear such costs only when relocation is made necessary by a valid governmental act. 191 Cal.App.3d at 236, 236 Cal.Rptr. at 354. The purpose of such a rule is to insulate government and thereby, the taxpayers, from such expenses. 191 Cal.App.3d at 237, 236 Cal.Rptr. at 354. By analogy, the *Damé* court reasoned that PG & E's ratepayers were comparable to taxpayers and should be shielded from liability for relocation costs. Moreover, in rejecting Damé's argument that the road widening was a "governmental act" although performed and paid for by Damé, the court found such an interpretation stretched the meaning of that phrase well beyond common understanding. Nor did Damé stand in the position of the government by undertaking public improvements that the county would otherwise have had to perform. The Court reasoned that Damé's private development "accelerated the need for the public improvement, thereby providing the nexus which justifies imposition of all of the costs thereof on the developer." *Id.* Finally, the court found unpersuasive Damé's argument that, because the county requested PG & E to relocate its facilities, PG & E must bear the costs of such relocation. It noted the request was, in all likelihood, directed to PG & E because the equipment was installed and maintained by the utility. It also found significant the absence of any mention of cost allocation in the County's request. 191 Cal.App.3d at 238, 236 Cal. Rptr. at 354–5.

Having found the common law rule inapplicable, the court of appeals considered with approval a benefit analysis whereby costs are allocated to those who are beneficiaries of the improvement. 191 Cal. App.3d at 238, 236 Cal.Rptr. at 355.

We find the holding and rationale of Damé persuasive. While the language of pertinent Missouri statutes differs from the California enactment, both embody the common law rule and, as indicated earlier, both enactments require a valid governmental act and governmental purpose before the utility must bear the costs of relocation. No governmental act is presented in this case. Thus, neither the common law rule nor the Missouri statutes discussed earlier apply to the factual situation in this case.

Moreover, certain arguments regarding fairness advanced by Appellants are similar to those considered and rejected in *Damé*. We find Appellant's equitable arguments unpersuasive. Appellant Developers, by their private development deci-

sions, have triggered the need for road improvements and thus for facility relocations. They are in a position, when making those development decisions, to factor the cost of utility relocations into their project plans. They can accept those costs, if feasible, and proceed to complete their projects. Or, they can decline to undertake a project if the relocation costs are beyond their present resources. Developers thus have a better opportunity than the Water Company to anticipate and to plan for the costs of relocation associated with their proposed projects. The Water Company, if forced to bear the costs whenever a developer's project requires facility relocations, has no similar opportunity to anticipate, much less to plan, the allocation of its resources to meet those costs.

The judgment of the trial court is affirmed.

CARL R. GAERTNER and STEPHAN, JJ., concur.