# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3542

_____

| | | |
|---|---|---|
| Joe D. Whisenhunt; Margaret H. Whisenhunt, | * * * | |
| Appellants, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Southwestern Bell Telephone, doing business as ATT Arkansas; Southwestern Bell Telephone Company, doing business as ATT Arkansas, | * * * * * | |
| Appellees. | * | |

_____

Submitted: April 16, 2009
Filed: July 17, 2009

_____

Before WOLLMAN, MELLOY, and GRUENDER, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Joe and Margaret Whisenhunt sought a declaratory judgment that Southwestern Bell Telephone (AT&T) must bear the cost of relocating utilities to accommodate the construction of certain streets within the city of Little Rock in connection with the

Whisenhunts' development of real property. The Whisenhunts appeal from the district court's[1] grant of summary judgment to AT&T. We affirm.

I.

The Whisenhunts sold approximately fifty acres of land to Fellowship Bible Church and entered into an agreement with the church to develop some eleven adjacent acres owned by the Whisenhunts. The properties are located east of Kirk Road and North of Wellington Hills Road. The development would likely be a combination of commercial space, such as retail space and restaurants, and multi-family residences. The agreement provided that the Whisenhunts would complete site work at their sole cost and expense, including grading the land, improving and extending nearby roads, and installing and providing water, sanitary sewer, electric, gas, and telephone services. Additionally, the Whisenhunts were responsible for securing the necessary permission and approval from the Little Rock Planning Commission (Commission).

Little Rock does not have a capital improvements budget and thus does not have money allocated for street improvements. Instead, the city has a boundary street ordinance that requires anyone seeking to construct "any curb, curb and gutter, section of street, [or] sidewalk" within the city to obtain a permit from the city. L.R.C. § 30-281. Approval of the permit application is contingent upon the developer's constructing the requisite boundary street improvements. L.R.C. § 30-283. Thus, Little Rock has often relied upon developers to improve streets connected with their developments.

---

[1]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

In 1957, Little Rock adopted a Master Street Plan (Plan) to provide a framework to accommodate future growth. The Plan map illustrated the location of major roads, both current and proposed. Prior to the Whisenhunts' development, the Plan called for Wellington Hills Road, currently a minor arterial road, to be extended north and for no improvements or extensions to Kirk Road, which was a smaller, collector street. The Whisenhunts' application to the Commission proposed that Wellington Hills Road be extended to the west to meet Kirk Road and then Kirk Road, which travels north/south, would be enlarged to a minor arterial road and extended north. This adjustment would create the requisite north/south minor arterial street sought by the Plan, but would cause Kirk Road to become the minor arterial road, rather than Wellington Hills Road.

The Commission reviewed the Whisenhunts' application and considered the results of a traffic study indicating a moderate increase in traffic as a result of the development. One commissioner sought additional time to review the traffic study, but a representative of the Whisenhunts indicated that additional time was not available because of the strict schedule imposed by the church. The representative assured the Commission that the Whisenhunts were committed to infrastructure improvements abutting their property to facilitate traffic flows. The Commission approved the Whisenhunts' application, finding that having Kirk Road as the minor arterial road would serve the public equally as well as the Plan's proposed location. The application was then approved by Little Rock's Board of Directors by the passage of Ordinance Numbers 19,599-61. Ordinances 19,560 and 19,561 specifically notified the Whisenhunts that "the cost of relocation of any utilities may be the responsibility of the developer at the time of such relocation."

The Whisenhunts proceeded with their development plans. As they began construction on Kirk Road, they encountered AT&T's utility lines. The Whisenhunts requested that AT&T relocate the utility lines. AT&T responded with an "Agreement for Custom Work," which required advance payment in the amount of $100,000 to

cover the costs of the relocation. The Whisenhunts refused to sign the agreement, believing that the relocation costs were to be borne by AT&T.

Both the Whisenhunts and AT&T believed that Little Rock's utility relocation policy required the other to bear the costs of relocating the utility lines. AT&T provides communication services within Little Rock pursuant to a franchise agreement established in 1952. The franchise permitted AT&T to place its facilities along, on, and over the city's streets. With the passage of Ordinance Number 14,981 in 1985, Little Rock adopted a utility relocation policy. The policy, which has been renewed annually, states that "the cost of relocating a public utility installation should not be borne by the City" when Little Rock makes improvements or repairs to public facilities located on public rights-of-way. Thus, the public utility must relocate its facilities at its own expense "in connection with any public works projects approved and/or performed by the City," regardless of the source of funds, at the direction of "the Director of Public Works or other officials authorized by the City Manager."

With both parties refusing to bear the costs of the relocation, the Whisenhunts filed this action. An initial request for injunctive relief was withdrawn following an escrow agreement between the parties whereby the Whisenhunts placed $100,000 in escrow and AT&T proceeded with the relocation work. In granting AT&T's motion for summary judgment, the district court concluded that the Whisenhunts' development was not a public works project and that the Whisenhunts were the dominant moving party necessitating the relocation of AT&T's facilities. The court therefore concluded that the Whisenhunts must bear the associated costs.

II.

We review a district court's grant of summary judgment *de novo* and view the evidence in the light most favorable to the nonmovant. Nitro Distrib., Inc. v. Alticor, Inc., 565 F.3d 417, 422 (8th Cir. 2009). Summary judgment is appropriate if the

-4-

evidence "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant bears the burden of making this showing, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), and the party opposing the motion "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

"The general common-law rule is that a utility must bear its own relocation costs when relocation of equipment is required by public necessity." Craighead Elec. Coop. Corp. v. Craighead County, 98 S.W.3d 414, 420 (Ark. 2003). This rule is embodied in the utility relocation policy in Little Rock, which requires the utility to bear the costs in connection with public works projects when directed to do so by the appropriate city authority. The general rule does not apply "when the actions of a private developer necessitate the relocation of the utility lines." 99-181 Op. Ark. Att'y Gen. (1999) (citing Pac. Gas and Elec. Co. v. Dame Constr. Co., 191 Cal. App. 3d 233 (Cal. Ct. App. 1987)).

The development undertaken by the Whisenhunts does not fall within the city's relocation policy. The policy's primary purpose is to ensure that the city is not required to shoulder relocation costs when it engages in a public project; it is not designed to shield private developers from the obligation to pay associated development costs. State courts have consistently recognized this distinction when commenting on the purpose of the common law rule, which is "to insulate government and thereby, the taxpayers, from such expenses." Home Builders Ass'n. v. St. Louis County Water Co., 784 S.W.2d 287, 292 (Mo. Ct. App. 1989); see also Potomac Elec. Power Co. v. Classic Cmty Corp., 856 A.2d 660, 668 (Md. Ct. App. 2004); Dame, 191 Cal. App. at 237. The development at issue here is a private commercial development involving no city actors.

Further, the church and the Whisenhunts alone initiated the development. The Arkansas Supreme Court addressed a similar issue after the Little Rock Housing Authority undertook an urban renewal project to modernize a storm drainage system and a drainage ditch within the city. Ark. La. Gas Co. v. City of Little Rock, 506 S.W.2d 555, 556-57 (Ark. 1974). After determining that the Housing Authority was an entity independent of the city, the court ordered the Authority to pay for the costs of relocation because it was the "dominant moving party" behind the improvements that necessitated alterations to the utilities. Id. at 558-59; accord Potomac Elec. Power Co., 856 A.2d at 669 ("[W]here the relocation is triggered and made necessary by a private development, the common law rule does not apply and the developer must pay the cost of the relocation."). There is no evidence that anyone but the Whisenhunts and the church were the driving force behind this development.

The Whisenhunts argue that because the improvements they made to Kirk Road were dictated by the city for the benefit of the public, AT&T should be required to pay for the relocation pursuant to city policy. Cities across the country commonly require developers to improve surrounding public areas in exchange for approval of development applications. The facts of this case are not unlike those in numerous other cases involving the relocation of utilities. In Dame, approval of the developer's property was conditioned on his agreement to "widen that portion of San Ramon Valley Boulevard immediately adjacent to the site of the proposed development." 191 Cal. App. at 235. In Potomac Electric Power, the developer was required to "widen Travilah Road and construct a shoulder road, an adjacent drainage ditch, and sidewalks." Similar road improvements were required in Home Builders Association, 784 S.W.2d at 289; City of Bridgeton v. Missouri-American Water Co., 219 S.W.3d 226, (Mo. 2007); and Sundquist Homes v. Snohomis, PUD, 965 P.2d 1148, 1149 (Wa. Ct. App. 1998).[2]

---

[2]Of the above-listed cases, only City of Bridgeton required the utility to pay for its relocation. In that case, there was a legislative resolution passed by the mayor and city council declaring the road work a "public governmental act." 219 S.W.3d at 230.

A city's conditions to a permit application's approval will not ordinarily convert an otherwise private development into a public works project. That the public benefits from the construction does not result in such a conversion, nor does the fact that Little Rock has an established system that apparently relies upon such conditions. The evidence reveals that although a minor arterial road was planned for the future, there was no foreseeable, and certainly no imminent construction intended by the city. Cf. City of Bridgeton, 219 S.W.3d at 229 (noting that Bridgeton had intended to do necessary improvements on Taussig Road for some time, but was unable to fund the construction). It is also undisputed that the location of the minor arterial road was changed to accommodate the Whisenhunts' development. The Whisenhunts "erroneously seek to equate governmental purpose with governmental action." Home Builders Assoc., 784 S.W.2d at 291. Though the public may benefit from the construction on Kirk Road and the Whisenhunts may in turn be effectuating a governmental purpose, their acceptance of conditions to accomplish their private development should not be equated with action by the city of Little Rock. The actions here were private; even "by complying with exactions, property owners such as Developers, are performing no governmental acts." Id.

      The judgment is affirmed.

_____

---

In contrast, the commission's approval of the Whisenhunts' proposed development and specifically, the construction to Kirk Road, does not constitute a legislative finding of government action.