Filed 2/11/15  Mahgerefteh v. Verizon California CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| NASSER MAHGEREFTEH,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>VERIZON CALIFORNIA, INC.,<br><br>    Defendant and Respondent. | G050291<br><br>(Super. Ct. No. 30-2013-00662073-CU-NP-CJC)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Ronald L. Bauer, Judge.  Affirmed.

Nasser Mahgerefteh, in pro. per., for Plaintiff and Appellant.

AlvaradoSmith and Rick D. Navarrette for Defendant and Respondent.

Nasser Mahgerefteh appeals from the judgment in favor of Verizon California, Inc. (Verizon). After he built his house such that the driveway and garage door were directly blocked by a preexisting utility pole located within a utility easement, Mahgerefteh requested Verizon move its lines to another utility pole and remove the offending pole at Verizon's sole cost. When Verizon insisted Mahgerefteh bear the cost of relocating the lines and removing the pole, Mahgerefteh sued Verizon for negligence and trespass. The trial court granted Verizon's summary judgment motion concluding as to the negligence causes of action that Mahgerefteh had failed to establish Verizon owed a duty of care and as to the trespass that Mahgerefteh failed to establish Verizon had wrongfully entered on Mahgerefteh's property. Mahgerefteh has failed to demonstrate any error on appeal, and we affirm the judgment.

FACTS AND PROCEDURE

*The Complaint*

Mahgerefteh's complaint, filed in propria persona, alleged he constructed a 4,650 square foot house on vacant land in the City of Huntington Beach (the City) that he intended to use as a rental property. During construction Mahgerefteh informed Verizon the utility pole containing Verizon's transmission equipment (hereafter the Verizon pole), blocked the driveway and garage and he wanted it moved. The complaint alleged the Verizon pole was located on Mahgerefteh's property within two feet of the property line. Mahgerefteh alleged Southern California Edison (SCE) placed a new utility pole (hereafter the SCE pole) at the edge of Mahgerefteh's property at its own expense. Mahgerefteh had repeatedly called Verizon and asked it to move its equipment to the SCE pole and remove the Verizon pole, but Verizon's representatives delayed returning Mahgerefteh's calls and were uncooperative. Mahgerefteh alleged he cannot get an occupancy permit for the new house until the Verizon pole is removed and the delay has caused him to suffer lost rental income.

2

Based on the foregoing allegations, Mahgerefteh pled two negligence causes of action. One negligence cause of action (first cause of action) alleged Verizon was negligent and breached a fiduciary duty by not returning Mahgerefteh's telephone calls and following up with him in a timely manner. The other negligence cause of action (third cause of action) alleged Verizon was negligent by not relocating its transmission equipment and removing the Verizon pole at its sole cost. The complaint also contained a trespass cause of action (second cause of action) alleging the Verizon pole was on Mahgerefteh's property, there was no recorded easement, and Verizon did not have permission to have its pole on Mahgerefteh's property.

*Summary Judgment Motion*

Verizon filed a motion for summary judgment. Its separate statement of undisputed material facts set forth the following. Mahgerefteh was a general contractor. Mahgerefteh and his wife bought the subject vacant undeveloped real property in 2009. The Verizon pole had been installed, and was in the same position and location, long before Mahgerefteh bought the property. Mahgerefteh was aware of the Verizon pole when he bought the property. The Verizon pole was within a two and one-half foot utility easement granted to the City. In 2011, Mahgerefteh signed an easement deed granting the City "a perpetual easement and right of way for street and public utility purposes in, on, over, under and across" the southerly 2.5 feet of the property.

In 2010, Mahgerefteh began the process of designing and constructing the house on the property. The construction was completed in 2013. Mahgerefteh was aware of the utility easement before he submitted his plans and drawings to the City for approval. The grading plan Mahgerefteh submitted to the City, which was prepared by Mahgerefteh's brother, had a specific notation on it requiring the Verizon pole be relocated. The City approved the grading plan as submitted with the note stating the Verizon pole had to be relocated. The house Mahgerefteh designed and planned required relocation of the Verizon pole, and Mahgerefteh as general contractor constructed the

3

house according to those plans. Relocating the Verizon pole was within the scope of the work Mahgerefteh was to perform as general contractor.

Mahgerefteh filed opposition to Verizon's summary judgment motion but did not meaningfully dispute any of Verizon's undisputed facts.[1] Mahgerefteh provided his own declaration stating he was an engineer, and in his opinion and in the opinion of two other unnamed licensed engineers, the Verizon pole blocked Mahgerefteh's garage and it was unsafe. Mahgerefteh declared Verizon would charge more than $28,000 to relocate its lines to the SCE pole and remove the Verizon pole, but Mahgerefteh believed it should not cost more than $1,700. Mahgerefteh claimed SCE said it would remove the Verizon pole for free if Verizon would just relocate its lines. Verizon filed objections to Mahgerefteh's declarations.

Mahgerefteh's opposition also included various exhibits. They included photographs of various utility poles, a letter from a surveyor describing the location of the various utility poles, printouts of what appear to be rules of the California Public Utilities Commission (PUC), a printout of a page from the PUC Web site, a printout of a page from the City's Municipal Code, and a copy of a page from something called, "Joint Pole Routine Handbook." Verizon objected to all Mahgerefteh's exhibits as lacking authentication or foundation and being hearsay.

*Ruling*

The trial court granted Verizon's motion for summary judgment. As to Mahgerefteh's negligence causes of action, it found Mahgerefteh failed to establish Verizon owed him a legal duty of care. Specifically, Mahgerefteh had not demonstrated

---

[1] There were only three "facts" that Mahgerefteh disputed: Verizon had stated as undisputed facts that Mahgerefteh had provided factually devoid responses to some of its interrogatories, that he had no facts to support one of his negligence causes of action, and that he was unaware of any regulation or rule requiring Verizon to pay to relocate the Verizon pole. To each of these, Mahgerefteh replied, "Disputed. Too many rules and regulations."

4

any material issue of fact as to whether Verizon owed a duty to Mahgerefteh to bear the costs of removal and relocation of the Verizon pole. As to the trespass cause of action, the court found the undisputed facts were the Verizon pole was within the utility easement. The court did not rule on Verizon's objections to Mahgerefteh's declarations and other evidence. A judgment was entered for Verizon, and Mahgerefteh filed this appeal.

DISCUSSION

*A. Standard of Review*

Before addressing Mahgerefteh's specific causes of action, we set forth relevant legal principles governing our review. First, is the well-established standard for reviewing summary judgments. "Summary judgment is appropriate only if there is no triable issue of material fact and the moving party is entitled to judgment in its favor as a matter of law. [Citation.] . . . A defendant moving for summary judgment . . . must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense. [Citation.] The defendant can satisfy its burden by presenting evidence that negates an element of the cause of action or evidence that the plaintiff does not possess and cannot reasonably expect to obtain evidence needed to support an element of the cause of action. [Citation.] If the defendant meets this burden, the burden shifts to the plaintiff to set forth 'specific facts' showing that a triable issue of material fact exists. [Citation.] [¶] We review the trial court's ruling de novo, liberally construe the evidence in favor of the party opposing the motion, and resolve all doubts concerning the evidence in favor of the opposing party. [Citation.] We will affirm an order granting summary judgment . . . if it is correct on any ground that the parties had an adequate opportunity to address in the trial court, regardless of the trial court's stated reasons. [Citations.]" (*Securitas Security Services USA, Inc. v. Superior Court* (2011) 197 Cal.App.4th 115, 119-120.) We examine the evidence submitted in connection with the summary judgment motion, with the exception of evidence to which objections have

5

been appropriately sustained (Code Civ. Proc., § 437c, subd. (c); *Mamou v. Trendwest Resorts, Inc.* (2008) 165 Cal.App.4th 686, 711), and we do not consider new factual allegations made for the first time on appeal (*Havstad v. Fidelity National Title Ins. Co.* (1997) 58 Cal.App.4th 654, 661 (*Havstad*)).

Next are rules concerning an appellant's burden. Although we independently assess the grant of summary judgment, our inquiry is governed by the fundamental principle of appellate procedure that "'[a] judgment or order of the lower court is presumed correct . . . and [thus,] error must be affirmatively shown.'" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564, italics omitted.) Under this principle, Mahgerefteh bears the burden of establishing error on appeal, even though Verizon had the burden of proving its right to summary judgment before the trial court. (*Frank and Freedus v. Allstate Ins. Co.* (1996) 45 Cal.App.4th 461, 474.) "[D]e novo review does not obligate us to cull the record for the benefit of the appellant in order to attempt to uncover the requisite triable issues. As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority. In other words, review is limited to issues which have been adequately raised and briefed. [Citations.]" (*Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 116; *Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125-126.)

And last is the principle that "[p]ro. per. litigants are held to the same standards as attorneys." (*Kobayashi v. Superior Court* (2009) 175 Cal.App.4th 536, 543.) That Mahgerefteh is self-represented does not exempt him from satisfying his appellate burden. "Under the law, a party may choose to act as his or her own attorney. [Citations.] '[S]uch a party is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys. [Citation.]' [Citation.]" (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247.) A

self-represented litigant is not entitled to lenient treatment. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985.)

B. *Negligence Causes of Action*

Mahgerefteh contends the trial court erred by granting summary judgment as to his negligence causes of action. The elements of negligence are: "(1) the defendant's legal duty of care towards the plaintiff, (2) the defendant's breach of that duty, (3) injury to the plaintiff as a proximate result of the breach, and (4) damage to the plaintiff. [Citation.]" (*Jones v. Grewe* (1987) 189 Cal.App.3d 950, 954.) Similarly, "[t]he elements of a cause of action for breach of fiduciary duty are: (1) the existence of a . . . duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." (*Stanley v. Richmond* (1995) 35 Cal.App.4th 1070, 1086.)

The trial court concluded Mahgerefteh failed to demonstrate Verizon owed a duty of care towards Mahgerefteh. Determining the existence of a legal duty to use reasonable care under a particular set of facts is a question of law for the trial court to decide. (*Phillips v. TLC Plumbing, Inc.* (2009) 172 Cal.App.4th 1133, 1139.)

Mahgerefteh's opening brief is largely indecipherable and devoid of any reasoned legal analysis or clearly articulated issues. (See *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 (*Badie*) [when appellant raises contention but "fails to support it with reasoned argument and citations to authority, we treat the point as waived"]; *Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699-700 (*Landry*) ["[w]hen an issue is unsupported by pertinent cognizable legal argument it may be deemed abandoned and discussion by the reviewing court is unnecessary"].) Nonetheless, we can ascertain from it, the following. Mahgerefteh's first negligence cause of action was premised on the theory Verizon was negligent (and breached a fiduciary duty) by not timely responding to his requests that the Verizon pole be removed. Mahgerefteh's second negligence cause of action was premised on the theory Verizon was negligent by not removing the Verizon pole. Mahgerefteh's contentions on

7

appeal largely seem to be that Verizon had a duty to move its transmission facilities to the new SCE pole to accommodate his house construction and to bear the costs of that move. Both negligence causes of action are fundamentally premised upon Mahgerefteh's belief Verizon was required to bear the costs of moving the utility pole to accommodate his construction.

Mahgerefteh cites to no law that compels a utility company to bear the cost of moving its equipment to accommodate a private developer. Indeed, the law appears to be the opposite. Both common law and statutory law require a utility to bear the cost of relocating its equipment only when required to do so by a public agency for the benefit of the public. For example, in *Pacific Tel. & Tel. Co. v. Redevelopment Agency* (1977) 75 Cal.App.3d 957, the court held the utility must bear the cost of relocating facilities located in a public street necessitated by vacation of the street in furtherance of a redevelopment project. (See also *Pacific Tel. & Tel. Co. v. Redevelopment Agency* (1978) 87 Cal.App.3d 296 [same].)

Public Utilities Code section 6297, upon which Mahgerefteh relies, provides a utility company, "[S]hall remove or relocate without expense to the municipality any facilities installed, used, and maintained under the franchise if and when made necessary by any lawful change of grade, alignment, or width of any public street, way, alley, or place, including the construction of any subway or viaduct, by the municipality." But case law has concluded this statute requires a utility company to bear the cost of relocating its equipment only when required to do so by a public agency for the benefit of the public.

*Pacific Gas & Electric Co. v. Dame Construction Co.* (1987) 191 Cal.App.3d 233, is instructive. In that case, as a condition to approving a 715-home subdivision, a county required the developer to widen a public road in which the utility had power poles and distribution lines. The developer contended the utility had to bear the cost of relocation of its poles and lines to accommodate the widening. The Court of

8

Appeal disagreed, concluding that "where a private party, on its own initiative and not that of government, develops a parcel of land and thereby creates or aggravates a need for a public improvement which requires the relocation of existing utility equipment, the private party shall bear the necessary relocation costs." (*Id.* at p. 242.)

The PUC has similarly concluded when utility equipment is relocated to accommodate a private development, the developer, not the utility, must bear the relocation cost. In *Mast v. Pacific Gas & Electric Co.* (1993) 47 Cal. P.U.C. Dec. No. 93-01-042 [1993 Cal. PUC Lexis 41]), as a condition of approving a three-house subdivision, a city required the developer to widen a street and construct new curb, gutter and sidewalk, which necessitated moving a power pole. The PUC concluded the developer, not the utility, had to bear the relocation costs.

Although Public Utilities Code section 6297 and case authority are clear the utility need not bear the cost of relocating its equipment to accommodate a private development, Mahgerefteh argues a PUC general order requires relocation of the equipment and removal of the Verizon pole. He refers to a document attached to his opposition which he asserts are portions of PUC General Order 95 (GO 95). He did not request judicial notice of the document. Mahgerefteh cites to section 31.4 of GO 95 which reads, "31.4 Cooperation to Avoid Conflicts. [¶] Any party contemplating construction or reconstruction which would create a conflict with a line of another classification shall notify the party or parties owning or operating the other line, in advance of such construction, giving full information as to the location and character of the proposed construction, and the parties concerned shall cooperate with a view of avoiding or, if this is impracticable, of minimizing the hazard." Mahgerefteh argues that by operation of this rule, once SCE installed a new pole for its transmission lines, Verizon was required to move its facilities to that pole and remove its pole. Assuming the PUC document is properly before us, it does not say what Mahgerefteh thinks it says.

9

The rule refers only to cooperation between *utilities* in locating lines to avoid conflicts. There is no evidence in the record of any conflict between the SCE and Verizon facilities.

Mahgerefteh also contends the City's Municipal Code requires Verizon to pay to relocate its lines to the SCE pole and remove the Verizon pole. He refers to Huntington Beach Municipal Code section 17.64.050, which requires undergrounding of all *new* public and private utility lines and distribution facilities. But Mahgerefteh offers no cogent explanation as to how that section operates to require a utility to bear the cost of relocating existing facilities to accommodate a private developer. Accordingly, we need not discuss the code section further.

Mahgerefteh also argues Verizon must remove the Verizon pole because it has become unsafe and unstable once SCE lines and other utilities' lines were removed. But there is no evidence in the record to support this assertion and we cannot consider new factual allegations made for the first time on appeal. (*Havstad, supra,* 58 Cal.App.4th at p. 661.)

In sum, Mahgerefteh has failed to demonstrate Verizon owed a legal duty to Mahgerefteh to bear the cost of relocating its equipment and removing the Verizon pole. Accordingly, summary judgment on the complaint's negligence causes of action was appropriate.

*Trespass Cause of Action*

The trial court granted summary judgment on Mahgerefteh's trespass cause of action. Mahgerefteh's complaint alleged Verizon did not have permission to have its pole on Mahgerefteh's property. Mahgerefteh did not dispute the Verizon pole was installed long before he bought the property; he was aware of the pole when he bought the property; the pole was located within a two and one-half foot utility easement; and his building plans required the pole be moved.

Although he challenges granting summary judgment on his trespass cause of action, as with his negligence causes of action, Mahgerefteh's opening brief is

10

indecipherable and devoid of any reasoned legal analysis or clearly articulated issues and we may treat the claim as waived. (*Badie, supra,* 67 Cal.App.4th at pp. 784-785; *Landry, supra,* 39 Cal.App.4th at pp. 699-700.) Moreover, we are satisfied summary judgment on the trespass cause of action was proper. The elements of a cause of action for trespass are plaintiff's lawful possessory interest in the real property, defendant's wrongful physical invasion or intrusion on the property, and damages proximately caused. (See CACI No. 2000; see also *Smith v. Cap Concrete, Inc.* (1982) 133 Cal.App.3d 769, 774-775.) Mahgerefteh could not prove the Verizon pole was wrongfully placed on his property because Mahgerefteh agreed it was located within the utility easement. "An easement is a nonpossessory interest in the land of another that gives its owner the right to use that property. [Citation.]" (*Carstens v. California Coastal Com.* (1986) 182 Cal.App.3d 277, 287.)

Mahgerefteh suggests the easement was only granted for alley widening purposes, and the undergrounding of utilities in the alley, and therefore continuing the placement of the Verizon pole is not within the scope of the easement. Not only was this argument not raised below, it conflicts with the express language of the easement Mahgerefteh signed granting the City "a perpetual easement and right of way for street and public utility purposes *in, on, over, under and across*" the southerly 2.5 feet of the property. (Italics added.) Mahgerefteh has not demonstrated any error in granting summary judgment on his trespass cause of action.[2]

---

[2] Mahgerefteh raises new arguments in his reply brief. One appears to be the trial court erred by failing to issue a statement of decision, although no statement of decision was requested. The other appears to be a challenge Verizon's evidentiary objections, although the trial court never ruled on them. (See *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534 [presume objections overruled if trial court does not expressly rule on them].) We do not address issues raised for the first time in the reply brief and thus do not consider these points further. (*Minish v. Hanuman Fellowship* (2013) 14 Cal.App.4th 437, 471, fn. 19.)

11

DISPOSITION

The judgment is affirmed.  Respondent is awarded its costs on appeal.


O'LEARY, P. J.

WE CONCUR:


FYBEL, J.


IKOLA, J.

12