[No. 2438–3. Division Three. June 23, 1977.]

PUGET SOUND POWER & LIGHT COMPANY, *Appellant,*
v. PUBLIC UTILITY DISTRICT NO. 1 OF
CHELAN COUNTY, *Respondent.*

*William S. Weaver* and *Perkins, Coie, Stone, Olsen & Williams,* for appellant.

*David J. Dorsey* and *Davis, Arneil, Dorsey, Kight & Parlette,* for respondent.

MUNSON, C.J.—Puget Sound Power & Light Company (Puget), an investor–owned electric utility, appeals from an order denying its motion to compel arbitration.[1]

Public Utility District No. 1 of Chelan County (Chelan), the owner and licensee of the Rock Island Project No. 943, applied for an order amending its license to allow a second power house at the Rock Island Dam. The Federal Power Commission (FPC) amended Chelan's license on the condition that (1) it file a recreation use plan (exhibit R) (*Conservation of Power and Water Resources*, 18 C.F.R. § 4.41 (1975)), and (2) it construct and maintain the recreational facilities outlined in exhibit R as approved by the FPC. Subsequently, Chelan and Puget entered into a contract entitled "Power Contract—Rock Island Joint System"[2] whereby Chelan agreed to sell Puget, on a cost basis,[3] a substantial portion of the power generated by the expanded Rock Island Project. Section 26 of the contract provides in part:

> Matters which may be arbitrated . . . shall consist of all matters pertaining to the construction of, the maintenance and operation of, additions or betterments to, extensions of, replacements or renewals to the Joint Systems, . . . computation of Contract Debt Service and Contract Bonds Outstanding, . . . and all other matters materially affecting the cost of power to Puget, except such of the matters hereinabove described in this paragraph as are by law vested exclusively in the discretion of the District.

Thereafter, Chelan filed an exhibit R without notice to Puget. Puget, upon reviewing it, recommended certain adjustments and requested Chelan to ask the FPC to cease

---

[1]This matter is before the court on accelerated review pursuant to RAP 18.12. Generally requests for accelerated disposition in this division are not granted; however, accelerated review was granted here only because Puget's right to compel arbitration pursuant to the contract, if the trial court was in error, would be mooted by the normal time periods for appeal.

[2]This contract is the third in a series of power contracts dating back to 1956.

[3]Power Contract—Rock Island Joint System, section 5 at 19–32.

processing the exhibit pending revision. Chelan complied and the FPC permitted it to file a revised exhibit.[4]

Chelan and Puget were unable to agree as to the content of the revised exhibit. Pursuant to its contract, Puget made a formal written recommendation to Chelan as to the content and scope of the revised exhibit. Chelan rejected that recommendation. Puget then sought to submit the dispute to arbitration under section 26, however, Chelan refused. Puget moved to compel arbitration (*see* RCW 7.04.010 *et seq.*) contending that the scope and content of exhibit R was within the purview of section 26 because Puget will bear a substantial portion of the exhibit's cost, *i.e.*, the exhibit's cost will be directly reflected in the cost basis of Puget's power. The trial court denied Puget's motion.

The sole issue is whether the scope and content of exhibit R is subject to arbitration under section 26. We hold that it is.

A municipal corporation such as Chelan possesses a twofold character. The first is usually designated governmental, legislative or discretionary. In this regard it acts as an agency of the state. The second is usually designated municipal, private or proprietary. In this regard it acts as a private business. 2 E. McQuillin, *Municipal Corporations* § 10.05, at 741 (3d ed. 1966). This distinction has long been recognized in Washington. *Seattle v. Stirrat,* 55 Wash. 560, 564-65, 104 P. 834 (1909); *Linne v. Bredes,* 43 Wash. 540, 546-47, 86 P. 858 (1906). Chelan's decision to enlarge the capacity of the Rock Island Dam is within the former character;[5] however, its decisions as to the production and sale of electricity lies within the latter character. *State v. O'Connell,* 83 Wn.2d 797, 834, 523 P.2d 872 (1974); 2 E. McQuillin, *Municipal Corporations* § 10.05, at 747 (3d ed. 1966).

---

[4]The deadline for filing the revised exhibit R is August 1, 1977.

[5]We assume expanded capacity is in the best interest of the public served by Chelan.

In its latter character, Chelan is implicitly authorized to make all contracts and to engage in any undertaking which is necessary to render the system efficient and beneficial to the public. *See* RCW 54.16.040 and .090; *e.g., Wilson v. Henderson,* 461 S.W.2d 90, 96 (Ky. 1970); 12 E. McQuillin, *Municipal Corporations* § 35.32, at 451 (3d ed. 1970). Pursuant to this authorization, Chelan contracted with Puget whereby Puget would purchase, at Chelan's cost, 100 percent of the expanded output for a period of years. As a condition to Puget's commitment, the parties wisely established a procedure for settling disputes relative to the cost of production, *i.e.,* the arbitration clause, section 26.

Chelan's authority to submit contract disputes to arbitration is inherent in its authority to contract, absent statutory or case law prohibition. *E.g., Thorgaard Plumbing & Heating Co. v. King County,* 71 Wn.2d 126, 426 P.2d 828 (1967); *Jackson v. Walla Walla,* 130 Wash. 96, 226 P. 487 (1924).

A second reason for compelling arbitration is found in the fact that Chelan's duty as licensee to file a recreation plan exists irrespective of its governmental character, *i.e.,* all licensees, whether they be a citizen, an association, a corporation, a municipal corporation or the state, may be required to file an exhibit R. *Conservation of Power and Water Resources,* 18 C.F.R. §§ 4.30 and 4.41 (1975). While the scope and content of exhibit R is discretionary with Chelan, it is discretionary within its proprietary character and not within its legislative character. Section 26 acknowledges the caveat of *Roehl v. PUD 1,* 43 Wn.2d 214, 261 P.2d 92 (1953), in that it exempts from arbitration discretionary matters within Chelan's governmental capacity as mandated by Title 54 of the Revised Code of Washington; however, the arbitration of exhibit R's scope and content does not come within that exemption.[6]

---

[6]Arbitration of the scope and content of exhibit R does not constitute an unlawful interference with the exclusive regulatory authority of the FPC. Puget does not contend that a finding of the arbitration board would bind the FPC to approve the arbitrated exhibit R.

The order of the trial court is reversed and Chelan is ordered to proceed in accordance with the arbitration provisions set forth in its contract with Puget.

GREEN, J., and FARIS, J. Pro Tem., concur.

Reconsideration denied July 14, 1977.