158 N.J. Super. 107 (1978)
385 A.2d 887
FELLOWSHIP BANK, A NEW JERSEY BANKING CORPORATION, PETITIONER-RESPONDENT,
v.
PUBLIC SERVICE ELECTRIC AND GAS COMPANY, A PUBLIC UTILITY, RESPONDENT-APPELLANT, AND STATE OF NEW JERSEY, BOARD OF PUBLIC UTILITY COMMISSIONERS, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 21, 1977.
Decided March 29, 1978.
*108 Before Judges FRITZ, BOTTER and ARD.
Mr. Richard Fryling, Jr. argued the cause for appellant (Messrs. Edward S. Kirby, James R. Lacey, Richard Fryling, Jr., Harold W. Borden, Jr., attorneys).
Ms. Jeanne M. Schubert argued the cause for respondent Fellowship Bank.
Mr. Mark A. Geannette, Deputy Attorney General, argued the cause for respondent Board of Public Utility Commissioners (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel).
PER CURIAM.
This is an appeal by Public Service Electric and Gas Company (PSE&G) from an order of the Board of Public Utility Commissioners (PUC) requiring PSE&G to absorb the cost of relocation of certain of its utility poles. Appellant utility company argues, first, that the PUC had no jurisdiction over the subject matter, and second, that the obligation to pay for relocation of utility facilities occasioned *109 by private development for private gain should be paid for by the private entity. We are satisfied that the PUC did and does have jurisdiction over the subject matter and that it properly applied existing law. Accordingly, we affirm.
The operative facts are not in dispute. Fellowship Bank (bank) was the owner of land abutting on Church Road in Mt. Laurel Township, a county road in Burlington County. In furtherance of its plan to build a banking office on this property, the bank sought site plan approval from the county planning board (board). Consistent with a site plan review resolution previously enacted by the Burlington County Board of Freeholders and in implementation of the requirement of the master plan that Church Road be planned for a width of 86 feet, the board gave the bank "conditional approval" of its site plan. One of the conditions was that the bank dedicate sufficient additional right of way on its side of Church Road to permit the planned 86-foot-wide road. Testimony indicates that a similar requirement was being imposed on each of the properties abutting Church Road as site plan approval was sought for the development of that property.[1]
The bank complied. This required the relocation of three poles by PSE&G. Who should bear that cost is one of the issues here.
PSE&G moved the poles and submitted a bill in the amount of $4,246.02 to the bank. The bank petitioned PUC for a determination with respect to which party should bear this cost. The agency found that the bank performed the widening of Church Road which necessitated relocation of the *110 utility poles in compliance with the requirements of Burlington County; that "[t]he necessity for the relocation of the curb line by [the bank] was occasioned by direct County action in that it was a prerequisite for the procurement of site plan approval from the Planning Board," and that accordingly PSE&G should absorb the cost of the relocation of the poles under the principles of Port of N.Y. Auth. v. Hackensack Water Co., 41 N.J. 90 (1963).
Turning first to the question of jurisdiction, we have no doubt that the PUC has the jurisdiction to consider disputes of this nature. We note the broad powers of general supervision and regulation of and jurisdiction and control over all public utilities, their property, property rights, equipment and facilities, invested in PUC by the Legislature in N.J.S.A. 48:2-13, the statute forwarded by the PUC herein as the basis for its jurisdiction. We acknowledge
* * * a legislative recognition that the public interest in proper regulation of public utilities transcends municipal or county lines, and that a centralized control must be entrusted to an agency whose continually developing expertise will assure uniformly safe, proper and adequate service by utilities throughout the State. Our courts have always construed these legislative grants to the fullest and broadest extent. * * * [In re Public Service Electric and Gas Co., 35 N.J. 358, 371 (1961)]
Beyond this, and unmentioned by the PUC here, that agency is authorized to "[i]nvestigate upon its own initiative or upon complaint in writing any matter concerning any public utility; * * *." N.J.S.A. 48:2-19. We think the petition of the bank is such a complaint.
With respect to the remaining question as to who should pay for this relocation, we note as dispositive the fact of the immutability of the county in its intention that Church Road ultimately be 86 feet wide, in accordance with the master plan. Once this fact is accepted, as it must be, the private interests of the bank in the improvement of its property appear in proper perspective. These did not determine whether the additional easement property would be *111 ceded (or if not voluntarily given, taken by eminent domain), but only when, i.e., sooner rather than later. The change in the nature of the interest in the land was to be in any event, and not because of the parochial interest of the bank but because of the determination by the county that the public interest required the conveyance, whether voluntary or forced.
In such event, the public utility is responsible for the cost of relocation. Port of N.Y. Auth. v. Hackensack Water Co., supra. As was there said, this is the price the utility company must pay for the privilege of location within a public right of way when the public welfare requires changes in the road which call for a relocation of facilities. 41 N.J. at 96-97.
Affirmed.
NOTES
[1] No one has here challenged the right of the board to impose this requirement and the propriety of the condition is not before us. It does not appear to matter to the determination of the narrow issues of this case. As is to appear, the important thing to the issues in question in the particular circumstances of this case is not the manner in which the county intention was effected, but rather that the county intention existed.