[No. 39938-1-I.    Division One.    November 2, 1998.]

SUNDQUIST HOMES, INC., ET AL., *Appellants*, v. SNOHOMISH COUNTY PUBLIC UTILITY DISTRICT NO. 1, *Respondent*.

*Brian M. Greene* and *Robert C. Rowley*, for appellants.

*James E. Deno* of *Deno Millikan Dale & Decker,* for respondent.

*Stephen Harold G. Overstreet* on behalf of Building Industry Association of Washington, amicus curiae.

APPELWICK, J. — By statute, entities with franchises to use county rights-of-way must pay the cost of relocating their facilities when the county roads where those facilities are located are improved. Thus, between the county and a franchisee, the statute assigns liability for those costs to the franchisee. But the statute does not prohibit franchisees like Snohomish County Public Utility District No. 1 (PUD) from charging those relocation costs to developers, like Sundquist Homes, who request moving the facilities in order to proceed with development. The PUD's authority to charge for those costs can be inferred from other statutes that give public utilities broad powers to achieve their lawful purposes. The trial court's order granting the PUD summary judgment is affirmed.

## Facts

Sundquist Homes and its partners develop real estate in Snohomish County. The County would not approve some of its plat applications unless Sundquist improved the roads adjacent to the proposed developments. The improvements to the roads meant utility facilities (transmission lines, poles, etc.) had to be relocated. The PUD charged Sundquist the cost of relocating the facilities. Sundquist paid the costs, but eventually questioned the PUD's policy of charging for them. The PUD informed Sundquist its policy was formalized in its Resolution 2751, which stated in part: "That, unless otherwise required by law or contract, the [PUD]

will not bear the cost of relocation when . . . [t]he relocation primarily is for the convenience of or benefits a private interest, even if it bestows a secondary public benefit.''

In 1996, Sundquist sued the PUD to recover what it had paid to relocate the PUD's facilities. Sundquist claimed its written agreements to pay the relocation costs were void, in part, because RCW 36.55.060(4) required the PUD to pay those costs. Sundquist moved for summary judgment, claiming the PUD's policy of charging developers to relocate the facilities was contrary to law. The PUD moved for summary judgment of dismissal, contending that RCW 36.55-.060(4) was not controlling and other statutes allowed the utility to charge Sundquist for relocating the facilities. The trial court granted the PUD's motion and denied Sundquist's motion. This appeal followed.[1]

## The Trial Court Properly Granted Summary Judgment

When reviewing a summary judgment order, this court undertakes the same inquiry as the trial court.[2] Considering all facts and reasonable inferences from the facts in the light most favorable to the nonmoving party, the court must determine whether any genuine issues of material fact existed and if the moving party was entitled to judgment as a matter of law.[3]

Sundquist contends the trial court misconstrued RCW 36.55.060, RCW 54.26.040, and RCW 54.24.080 when it held that the PUD could charge the cost of relocating its facilities to the developer, even though the County required Sundquist to make the road improvements before its plat applications would be approved.

Title 36 of the REVISED CODE OF WASHINGTON relates to counties. RCW 36.55 addresses franchises that counties

---

[1]Sundquist designated only the order granting the PUD's motion in its notice of appeal.

[2]*Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994).

[3]CR 56(c); *Tydings*, 125 Wn.2d at 341.

may grant so bridges and the rights-of-way of county roads may be used for utilities like sewer, gas, telephone, and electric lines.[4] RCW 36.55.060(4) requires franchise holders to pay the cost to move their facilities to another location along a county road if the road is altered or improved:

> The facilities of the holder of any such franchise shall be removed at the expense of the holder thereof, to some other location on such county road in the event it is to be constructed, altered, or improved or becomes a primary state highway and such removal is reasonably necessary for the construction, alteration, or improvement thereof.

■ Sundquist contends this statute prohibits the PUD from passing off the costs for moving its facilities to landowners whose developments necessitated the road improvements, even if the utility relocation benefits the landowner. But RCW 36.55.060(4) prohibits counties only from assuming the liability to pay those costs as between the county and the county's franchisees. It says nothing about how the franchisee may handle the costs with respect to any third party. Therefore, that statute is not controlling.

Sundquist further contends that the PUD has no powers other than those given to it by the Legislature, and that no statute specifically allows PUDs to charge the cost of relocating their facilities to a party requesting the relocation. But even though no statute explicitly enumerates that authority, the broad powers granted in Title 54 RCW, and the cases interpreting those statutes, support a conclusion that the PUD has that power.

RCW 54.16.040 gives the PUD full power to maintain and operate distribution lines and to control the charges for the electric current it distributes:

> A district may purchase . . . electric current for sale and distribution . . . and construct, condemn and purchase, purchase, acquire, add to, maintain, conduct, and operate works, plants, transmission and distribution lines and facilities for generating electric current . . . for the purpose of

---

[4]*See* RCW 36.55.010; RCW 36.55.030.

furnishing the district . . . with electric current for all uses, with full and exclusive authority to sell and regulate and control the use, distribution, rates, service, charges, and price thereof[.]

Similarly, RCW 54.24.080(1) gives the PUD the authority to levy fair, nondiscriminatory charges for its electric services and facilities when it has outstanding revenue obligations:

The commission of each district which shall have revenue obligations outstanding shall have the power and shall be required to establish, maintain, and collect rates or charges for electric energy and water and other services, facilities, and commodities sold, furnished, or supplied by the district. The rates and charges shall be fair and . . . nondiscriminatory, and shall be adequate to provide revenues sufficient for the payment of the principal of and interest on such revenue obligations[.]

▆ In *Hillis Homes, Inc. v. Public Util. Dist. No. 1*,[5] Washington's Supreme Court construed RCW 54.24.080 and RCW 54.16.030, which is essentially the same as RCW 54.16.040 except that it relates to a public utility's authority to regulate and control the use and distribution of water. Even though neither statute specifically authorized the PUD to charge new customers a fee to connect to its water supply system, the *Hillis* court held that the broad authority granted to PUDs in RCW 54.16.030 and RCW 54.24.080 gave the utility district that power. The court held that a statute which expressly grants general authority to achieve a lawful purpose implies the right to do what is reasonably necessary to achieve that objective, and that imposing a connection charge on new customers was a reasonably necessary means of effectuating the general powers expressly granted to the PUD.[6]

---

[5]*Hillis*, 105 Wn.2d 288, 714 P.2d 1163 (1986).

[6]*Id.* at 298.

■ Similarly, although neither RCW 54.16.040 nor 54.24.080 gives the PUD the specific authority to charge Sundquist the cost of relocating utility lines, that authority is reasonably inferred from the broad general powers granted to PUDs,[7] particularly when the Legislature specifically stated that the powers granted to PUDs in Title 54 RCW are not to be strictly construed:

> The rule of strict construction shall have no application to this act, but the same shall be liberally construed, in order to carry out the purposes and objects for which this act is intended.[8]

Sundquist cites no authority in support of its argument that the Legislature's intent behind RCW 36.55.040, RCW 54.16.040, and RCW 54.24.080 prohibits the PUD from charging relocation costs to developers who request the relocations incident to the development of property adjacent to the rights-of-way. Nor was the PUD's policy of charging its actual relocation costs discriminatory to developers of adjacent property that directly benefited from the relocations.[9] Moreover, all of the cases found from other jurisdictions that have addressed this issue and involved similar statutes have reached the same conclusion—i.e.

---

[7]*See Hillis*, 105 Wn.2d at 298; *see also Puget Sound Power & Light Co. v. Public Util. Dist. No. 1*, 17 Wn. App. 861, 864, 565 P.2d 1221 (1977) (acting in its proprietary, as opposed to governmental, capacity, a Chelan county PUD had the implicit authority to make all contracts and engage in any undertaking that was necessary to render the utility system efficient and beneficial to the public, including submitting contract disputes to arbitration, unless prohibited by statute or case law).

[8]Laws of 1931, ch. 1, § 11, p. 29. The quoted language now appears in the Reviser's note following RCW 54.04.020.

[9]*See Hillis*, 105 Wn.2d at 301 (Different classes of customers may be charged different rates as long as the classifications are reasonable. The amounts charged need not relate to the benefits each customer received: only a practical basis for the rates, not mathematical precision, is required.).

that a utility may pass along its relocation costs to developers whose projects necessitate road improvements.[10]

## No Factual Disputes Precluded Summary Judgment

The PUD's policy was to refuse to pay the cost of relocating its facilities if the relocation primarily benefited a private interest. Sundquist contends on appeal that even if the PUD had the authority to charge it the cost of relocating the utility lines, there was a dispute of fact over whether relocating those lines benefited Sundquist or the public. The developer claims there is no evidence that relocating the lines was related to power service for Sundquist or its buyers, and that the County made all the decisions relating to the road improvements.

But Sundquist took the position below that whether it was the primary beneficiary of the relocations or not was immaterial. And, despite that position, the evidence established that the improvements were for Sundquist's benefit. As a PUD employee explained:

> The construction of frontage improvements, while imposed on the development as a condition of plat approval, does not meet the definition of an official (County) project because the County has neither planned, budgeted, funded, nor constructed the improvements. The only reason the poles have to be moved is so the plat may proceed.

In fact, Sundquist itself conceded that the utility lines had to be relocated because the road improvements required for approval of Sundquist's plats necessitated moving them. Moreover, Sundquist acknowledged during argument before

---

[10]*See Pacific Gas & Elec. Co. v. Dame Constr. Co.*, 191 Cal. App. 3d 233, 236 Cal. Rptr. 351 (1987); *Home Builders Ass'n v. St. Louis County Water Co.*, 784 S.W.2d 287 (Mo. 1989); *Orange & Rockland Utils., Inc. v. Schulson*, 199 A.D.2d 952, 605 N.Y.S.2d 571 (1993); *cf. Fellowship Bank v. Public Serv. Elec. & Gas Co.*, 158 N.J. Super. 107, 385 A.2d 887 (1978) (where road widening was part of county's master plan, utility, not developer, must bear the cost to relocate utility lines); *cf. Eastern Edison Co. v. Barrett*, 22 Mass. App. Ct. 357, 494 N.E.2d 24 (1986) (statute and its legislative history supported conclusion that utility was required to pay the cost of temporarily relocating and de-energizing power lines to accommodate moving a customer's building).

this court that all the improvements that necessitated moving utility lines were made to roads adjacent to their developments.

Thus, even if the relocated lines do not supply power to Sundquist's developments and the County made all the decisions relating to the road improvements, there is no issue of fact whether moving the lines primarily benefited Sundquist. The main benefit was that Sundquist became entitled to proceed with its plats.

## Denying Sundquist's Motion For Summary Judgment Was Not Error

Despite its contention that there were factual disputes that precluded granting summary judgment in the PUD's favor, Sundquist argues its motion for summary judgment should have been granted. But Sundquist did not designate the order denying its motion for summary judgment in its notice of appeal, so this court need not decide whether that decision was erroneous.[11] Furthermore, because we have concluded that the trial court correctly construed RCW 36.55.060(4), RCW 54.16.040, and RCW 54.24.080, Sundquist's arguments that its contracts to pay to relocate the utility lines were void because they were ultra vires, lacked consideration, were based on a mutual mistake of law or on the PUD's misrepresentation, fail.

The decision of the trial court is affirmed.

BAKER, J., concurs.


GROSSE, J. (concurring) — I concur but write separately to highlight the fact that my agreement with the majority is conditional. The ultimate resolution of this case—that the developer must pay—turns on the fact that on this record it is undisputed that "[t]he only reason the poles have

---

[11]*See* RAP 2.4(a) and (b) (appellate court need not review a decision that was not designated in the notice of appeal unless it prejudicially affects the decision appealed from).

958

to be moved is so the plat may proceed." In my opinion, in every case of this kind, it is a question of fact as to who is the primary beneficiary of the relocation of the utility. If it is the public at large, then the utility must pay. If it is a private party, then that party must pay.

Reconsideration denied January 5, 1999.