997 P.2d 915 (2000)
140 Wash.2d 403
SUNDQUIST HOMES, INC., a Washington corporation; Echelbarger Development, Inc., a Washington corporation; Simmie Energy, Inc., a Delaware corporation; Phoenix Development, a Washington corporation; Alfred Mus; and Donald Saunders, Petitioners,
v.
SNOHOMISH COUNTY PUBLIC UTILITY DISTRICT NO. 1, a Washington municipality, Respondent.
No. 67715-8.
Supreme Court of Washington, En Banc.
Argued October 12, 1999.
Decided April 27, 2000.
*916 Robert C. Rowley, Kirkland, James J. Klauser, Seattle, for Petitioner.
James Deno, Everett, for Respondent.
Stephen Overstreet, Olympia, for Amicus Curiae on Behalf of Building Industry Association of Washington.
Richard Stephens, Bellevue, for Amicus Curiae on Behalf of Washington Association of Realtors.
ALEXANDER, J.
The principal issue before us is whether a public utility district may charge a real estate developer for costs the district incurs in relocating electrical transmission facilities, when the relocation is a necessary condition of the developer's project. We answer that question in the affirmative and, thus, affirm the Court of Appeals.
Sundquist Homes, Inc.[1] purchases large tracts of undeveloped land in Snohomish County and subdivides it into residential building lots. Snohomish County regularly conditions approval of Sundquist's plats on improvements to county roads adjacent to the proposed developments. Often, this requires relocation of electrical utility facilities, such as poles and transmission lines. Consequently, on 17 occasions between 1988 and May of 1995, Sundquist asked the respondent, Snohomish County Public Utility District No. 1 (PUD), the owner of electrical utility facilities in Snohomish County, to relocate such facilities. Each time the PUD agreed to do so, it entered into an agreement with Sundquist, which provided that the PUD would relocate the facilities and Sundquist would bear the actual expenses associated with the relocation. These agreements were consistent with a policy set forth in PUD Resolution 2751, which was enacted in 1983. It stated that the PUD "will not bear the cost of relocation when ... [t]he relocation primarily is for the convenience of or benefits a private interest, even if it bestows a secondary public benefit." Clerk's Papers at 106. On each of the occasions that the PUD moved electrical facilities at Sundquist's request, Sundquist paid the costs of relocation. These costs totaled more than $125,000.
Sundquist later questioned the PUD's authority to impose the costs and, in May 1996, it filed suit against the PUD, seeking a declaratory judgment, recission, injunctive relief, and damages. It claimed in its suit that the PUD should refund to it the amount it paid the PUD for the costs of the relocations. In support of its claim Sundquist advanced three theories, all of which were based on its assertion that the charges assessed by the PUD were contrary to law. The PUD moved for summary judgment, contending that Sundquist's suit should be dismissed. Sundquist also moved for summary judgment. The trial court granted the PUD's motion and denied Sundquist's. The Court of Appeals affirmed the trial court. We granted Sundquist's petition for review.

I.
Sundquist asserts that there is a disputed issue of material fact that makes dismissal *917 on summary judgment inappropriate. Review of a summary judgment is, of course, guided by familiar principles. Fundamentally, summary judgment is proper only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." CR 56(c). In ruling on a motion for summary judgment, a court must consider "[a]ll facts and reasonable inferences ... in the light most favorable to the nonmoving party, and all questions of law are reviewed de novo." Mountain Park Homeowners Ass'n v. Tydings, 125 Wash.2d 337, 341, 883 P.2d 1383 (1994) (citations omitted). Resolution of disputed factual issues can be sustained when reasonable minds could reach but one conclusion from the evidence accompanying a summary judgment motion. Central Wash. Bank v. Mendelson-Zeller, Inc., 113 Wash.2d 346, 353, 779 P.2d 697 (1989).
Sundquist contends that it is not clear from the record whether the PUD's relocation of electrical utility facilities was primarily for the benefit of Sundquist. Thus, it argues that the propriety of the imposition of the charges on Sundquist, pursuant to PUD Resolution 2751, cannot be determined. This argument is quite apart from its assertion that Resolution 2751 is contrary to state law. We note, at the outset, that this purported factual issue was never raised at the trial court. Although the failure to raise the issue below does not preclude Sundquist from raising it on appeal, its failure does suggest that the existence of a dispute of material fact was not readily apparent to Sundquist at summary judgment. That is understandable because, in our view, the trial court and the Court of Appeals properly held, after viewing the submissions in a light most favorable to Sundquist, that Sundquist was the primary beneficiary of the relocations at issue. The case was, therefore, ripe for summary judgment.
Our conclusion finds support in the submissions on summary judgment, and is contradicted by none of them. For example, the declaration of Michael Brown, Sundquist's land development manager, contains the statement that Sundquist requested the relocations; that the relocations were necessitated by Sundquist's plans for improvements; and that Sundquist agreed to pay for each of the relocations. Not surprisingly, Sundquist's counsel conceded at oral argument at the Court of Appeals "that all the improvements that necessitated moving utility lines were made to roads adjacent to their developments." Sundquist Homes, Inc. v. Snohomish County Pub. Util. Dist. No. 1, 92 Wash. App. 950, 956-57, 965 P.2d 1148 (1998), review granted, 138 Wash.2d 1001, 984 P.2d 1034 (1999).
At this stage, Sundquist's only argument on the issue is that "[t]he record is absolutely void of any evidence that the relocation of these facilities had anything to do with providing power service to Sundquist or future home buyers." Pet'rs' Supplemental Br. at 16. As noted above, the record belies this assertion. It also contains receipts submitted by Sundquist that make clear that the relocation of facilities was just one of several services the PUD performed for Sundquist, and that Sundquist paid the PUD's bill on each occasion.[2] Like the other services, each of the utility facility relocations was necessitated by Sundquist's development plans. To rebut the PUD's submissions, Sundquist cites no specific facts and, thus, is unable to establish the existence of genuine issue of material fact. See Mackey v. Graham, 99 Wash.2d 572, 663 P.2d 490 (1983). In sum, we are in accord with the Court of Appeals conclusion that "[t]he main benefit was that Sundquist became entitled to proceed with its plats." Sundquist, 92 Wash.App. at 957, 965 P.2d 1148.

II.
The primary issue in this case is whether RCW 36.55.060 prohibits the PUD from passing off to Sundquist the costs of relocating its utility facilities. That statute, in pertinent part, reads as follows:

*918 The facilities of the holder of any such franchise shall be removed at the expense of the holder thereof, to some other location on such county road in the event it is to be constructed, altered, or improved or becomes a primary state highway and such removal is reasonably necessary for the construction, alteration, or improvement thereof.
RCW 36.55.060(4).
Sundquist contends that, because the PUD holds the franchise and owns the electrical utility facilities that were relocated, "all costs related to situating or relocating the franchise facilities must be paid by the franchisee." Appellant's Revised Br. at 20. The "plain language" of this section, Sundquist argues, requires that franchisees bear all costs of facility relocation when a county road is improved.[3]
The flaw in Sundquist's reasoning is that the above-quoted section has to be read in light of the entire chapter within which it is located, RCW 36.55. Although every provision of that chapter regulates some aspect of the relationship between the County and its franchisees, no provision in the chapter pertains to the relationship between franchisees and third parties. That relationship is regulated by other chapters of the Code and the common law, as we discuss below. Thus, when RCW 36.55.060(4) is read in context it can be understood only to prohibit the County from assuming these costs as between the County and the franchisee. The statute does not, however, apply to the present controversy, as it does not address the issue of whether a relocation expense can be passed on to a third party.
Furthermore, as Sundquist points out, "[s]tatutes are to be construed to effect their purposes, and to avoid an unlikely or strained consequence." State v. Mierz, 127 Wash.2d 460, 480, 901 P.2d 286, 50 A.L.R.5th 921 (1995) (citing Ski Acres, Inc. v. Kittitas County, 118 Wash.2d 852, 857, 827 P.2d 1000 (1992)). If the "at the expense of the holder" language of RCW 36.55.060(4) prohibited the imposition of all costs of relocation on third parties, as suggested by Sundquist, then franchisees would also be prohibited from passing on these charges in rate increases to its rate-paying customers. Sundquist's "plain meaning" interpretation would, in short, lead to the absurd consequence that a nonprofit, municipal corporation, like a public utility district, would have no funds with which to pay for the relocations of facilities at the request of developers. This absurd, and we believe unintended, consequence is avoided by simply reading the statute in a commonsense manner.

III.
Sundquist also contends that the PUD was without authority to pass on relocation costs to it. Although we agree with Sundquist that mere passage of PUD Resolution 2751 would not justify the imposition of the charges, if the PUD otherwise lacked authority to impose them, we nonetheless conclude that Sundquist is mistaken in its overall assertion. We reach this conclusion despite the fact that there is no statutory provision directly addressing the PUD's authority to pass on these costs, being satisfied that its authority may reasonably be implied from several aspects of the PUD's proprietary authority, i.e., its powers to contract, set rates, and maintain facilities.
A public utility district is a municipal corporation under the constitution and statutes of Washington. RCW 54.04.020; Hite v. Public Util. Dist. No. 2, 112 Wash.2d 456, 458, 772 P.2d 481 (1989). "Municipal authorities cannot exercise powers except those expressly granted, or those necessarily implied from granted powers." Pacific First Fed. Sav. & Loan Ass'n v. Pierce County, 27 Wash.2d 347, 353, 178 P.2d 351 (1947); see also Granite Falls Library v. Taxpayers of Granite Falls, 134 Wash.2d 825, 834, 953 P.2d 1150 (1998).
In the context of the provision of electricity and related services a public utility district's powers are broadly implied. In the *919 production and sale of electricity, a municipal corporation acts in its proprietary capacity. Washington Pub. Power Supply Sys. v. General Elec. Co., 113 Wash.2d 288, 301, 778 P.2d 1047 (1989). In that capacity, a municipal corporation "`is implicitly authorized to make all contracts and to engage in any undertaking which is necessary to render the system efficient and beneficial to the public.'" Hite, 112 Wash.2d at 460, 772 P.2d 481 (quoting Puget Sound Power & Light Co. v. Public Util. Dist. No. 1, 17 Wash.App. 861, 864, 565 P.2d 1221 (1977)). Entering into contracts in order to recover out of pocket costs from a party who requests relocation of utility facilities for its primary benefit strikes us as an entirely reasonable and efficient method of financing relocations. Furthermore, it recognizes that the person or entity benefiting from the relocation should bear the expense associated with the effort.
The power to impose relocation costs on Sundquist may also be fairly implied from the PUD's rate-making and facility maintenance authority, which derives from RCW 54.24.080 and RCW 54.16.040. In relevant part, these statutes provide as follows:
54.24.080 Rates and charges.... (1) The commission of each district which shall have revenue obligations outstanding shall have the power and shall be required to... collect rates or charges for electric energy and water and other services ... furnished ... by the district. The rates and charges shall be fair and ... nondiscriminatory, and shall be adequate to provide revenues sufficient for the payment of the principal of and interest on such revenue obligations ... and for the proper operation and maintenance of the public utility and all necessary repairs, replacements, and renewals thereof.
54.16.040 Electric energy. A district may ... maintain, conduct, and operate... transmission and distribution lines ... for the purpose of furnishing the district... with electric current ... with full and exclusive authority to ... regulate and control the use, distribution, rates, service, charges, and price thereof.
Admittedly, neither statute expressly provides authority to the PUD to charge relocation costs to third parties. The statutes do, however, provide public utility districts with authority to maintain facilities and set prices for service and distribution of electric current. RCW 54.16.040. In addition, RCW 54.24.080 requires only that rates cover operating expenses and principal and interest on revenue obligations. See Carstens v. Public Util. Dist. No. 1, 8 Wash.2d 136, 151, 111 P.2d 583 (1941) (stating that a "municipally owned enterprise of this nature may not be operated for profit, and must establish its rates at the lowest possible point"). In our judgment, the expressly granted power to maintain facilities and set rates for electrical energy and other services includes, by implication, the power to charge private developers, such as Sundquist, for the costs of relocation in order to ensure that the PUD's "system [is] efficient and beneficial to the public." Hite, 112 Wash.2d at 460, 772 P.2d 481 (quoting Puget Sound Power & Light Co., 17 Wash.App. at 864, 565 P.2d 1221).
This court has construed similar statutes regulating a public utility district's water system to allow the district to impose a connection charge on new users, rather than passing on those expenses in the general rates. Hillis Homes, Inc. v. Public Util. Dist. No. 1, 105 Wash.2d 288, 298, 714 P.2d 1163 (1986). Although the instant case is distinguishable from Hillis Homes in that it dealt with hook up charges rather than relocation costs, as here, it is instructive on the issue of the scope of the PUD's power. Significantly, this court construed the district's statutory grant of "full and exclusive authority" to regulate the distribution of water to include the power to charge the actual cost of connection, notwithstanding the absence of language in the statute authorizing the specific charge. See Hillis Homes, 105 Wash.2d at 298-99, 714 P.2d 1163. In upholding the connection charges that were at issue there, we stated that an express grant of power "`includes by implication the right to do such acts as may be reasonably necessary to achieve that objective.'" Hillis Homes, 105 Wash.2d at 298, 714 P.2d 1163 (quoting Foundation for the Handicapped v. Department of Soc. & Health Servs., 97 Wash.2d 691, 698-99, 648 P.2d 884 (1982)).
*920 In sum, RCW 54.24.080 gives the PUD the power to collect charges for furnishing "other services" and RCW 54.16.040 gives it authority to maintain distribution lines. Consistent with the stance we took in Hillis Homes, we conclude that the power to charge a developer with the costs of relocating utility facilities for the developer's benefit is within the ambit of the powers expressly granted by those statutes.

IV.
Sundquist makes an additional argument that the "Court of Appeals decision violates housing affordability policy of the [Growth Management Act (GMA), RCW 36.70A.]"[4] Pet'rs' Supplemental Br. at 18. More specifically, it contends that if franchisees are allowed to pass on relocation costs to developers, the cost of new construction and existing housing will increase and be less affordable.
Whatever the merit of this policy underlying the GMA, Sundquist fails to connect the statutes we apply here today with that policy. We are unwilling to transport the public policy considerations that prompted the Legislature to adopt the GMA to statutes that are unconnected to that act and make no reference to it.

V.
Finally, we note that amici, the Building Industry Association of Washington and the Washington Association of Realtors have weighed in on Sundquist's behalf. These parties echo arguments that Sundquist has set forth in its briefing, and, to that extent, are dealt with above. Amici also raise arguments that were not raised by Sundquist. This court will not address arguments raised only by amici. Rabon v. City of Seattle, 135 Wash.2d 278, 291 n. 4, 957 P.2d 621 (1998) (citing In re Detention of J.S., 124 Wash.2d 689, 702, 880 P.2d 976 (1994)).

VI.
In conclusion, we agree with the Court of Appeals that there are no material factual issues, and that imposition of the relocation charges on Sundquist did not violate RCW 36.55.060(4) or the GMA, and is within the implied powers of the PUD acting in its proprietary capacity. Consequently, summary judgment in favor of the PUD was proper. The Court of Appeals is affirmed.
GUY, C.J., SMITH, JOHNSON, TALMADGE, JJ., and KENNEDY, J.P.T., concur.
SANDERS, J. (dissenting).
The real issue in this case is whether the Snohomish County Public Utility District Number 1 (hereinafter PUD) may lawfully shift the cost of relocating PUD utilities on county road rights-of-way to adjacent private property owners. While the majority acknowledges no express legal authority justifies shifting these costs, it nevertheless infers an inherent power to do so. However such inference is improper because it directly conflicts with established common law principles, not to mention plain statutory language. I would therefore reverse the Court of Appeals and remand to the trial court.
The PUD imposed the relocation fees at issue on Sundquist Homes pursuant to PUD Resolution 2751, which sets forth the general policy that "unless otherwise required by law or contract, the District will not bear the cost of relocation when ... [t]he relocation primarily is for the convenience of or benefits a private interest, even if it bestows a secondary public benefit;...." Clerk's Papers at 70. The majority correctly notes that "mere passage of PUD Resolution 2751 would not justify the imposition of the charges, if the *921 PUD otherwise lacked authority to impose them...." Majority at 918. Contrary to the majority, however, I submit the PUD otherwise lacks authority to impose them.
The first obstacle to the PUD's practice is the plain language of RCW 36.55.060(4) which, in the context of granting utility franchises, states:
The facilities of the holder of any such franchise shall be removed at the expense of the holder thereof, to some other location on such county road in the event it is to be constructed, altered, or improved or becomes a primary state highway and such removal is reasonably necessary for the construction, alteration, or improvement thereof.
(Emphasis added.) The majority does not so much ignore this statute as construe it away, stating without authority "the above-quoted section has to be read in light of the entire chapter within which it is located, RCW 36.55." Majority at 918. According to the majority, since this provision occurs in the RCW chapter regulating the relationship between counties and their franchisees, the statute can only mean that as between counties and franchisees, the counties will not be responsible for the costs of facilities removal or relocation. According to the canons of judicial construction, the majority continues, to construe this statute otherwise would lead to the absurd result that PUDs cannot pass on charges for facilities relocation to any third party payers. Majority at 918. However the question is not whether such costs may be passed to third party payers through a generally applicable and nondiscriminatory rate structure, but rather whether systemwide improvements may be charged to adjacent property owners as opposed to rate payers in the aggregate.
We do not subject unambiguous statutes to the canons of judicial construction. See Enterprise Leasing, Inc. v. City of Tacoma, 139 Wash.2d 546, 552, 988 P.2d 961 (1999) ("When words in a statute are plain and unambiguous, statutory construction is not necessary, and this Court must apply the statute as written unless the statute evidences an intent to the contrary."). RCW 36.55.060(4) is unambiguous both on its own terms and within the subsection of the code in which it is written. This statute does not just prohibit counties from bearing the costs of facilities relocation, as the majority reads it, rather it also plainly places the cost of facilities removal or relocation on the franchise holder to be recovered through its general revenue base. Absent ambiguity in the statute, which would necessitate construction, it is the legislature's jobnot oursto stem the tide of potential absurd results that might result from impartially applying the plain meaning of statutory language. So, contrary to the majority's assertion this statute "does not ... apply to the present controversy, as it does not address the issue of whether a relocation expense can be passed on to a third party," Majority at 918, it appears this statute not only preempts the contrary PUD Resolution 2751, but more fundamentally controls our entire analysis in this case.
Furthermore, RCW 36.55.060(4) simply extends the long-standing common law rule placing the burden of relocation costs on utility franchise holders. "[I]t is, of course, the general rule in this state and elsewhere that `public utility companies operating under a franchise must bear the cost of removing and of relocating their facilities, as it is made necessary by highway improvements.'" General Tel. Co. of the N.W., Inc. v. City of Bothell, 105 Wash.2d 579, 583, 716 P.2d 879 (1986) (quoting State v. Public Util. Dist. No. 1, 55 Wash.2d 645, 650-51, 349 P.2d 426 (1960)). See also Washington Natural Gas Co. v. City of Seattle, 60 Wash.2d 183, 186, 373 P.2d 133 (1962) ("[I]f the franchise is silent as to payment of the cost of relocation of utilities, made necessary by public improvements, the cost must be borne by the franchise holder.") (citing City of San Antonio v. Bexar Metro. Water Dist., 309 S.W.2d 491 (Tex.Civ.App.1958); First Nat'l Bank of Boston v. Maine Turnpike Auth., 153 Me. 131, 136 A.2d 699 (1957) Brunswick & Topsham Water Dist. v. W.H. Hinman Co., 153 Me. 173, 136 A.2d 722 (1957); Southern Bell Tel. & Tel. Co. v. State ex rel. Ervin, 75 So.2d 796 (Fla.1954); Southern Bell Tel. & Tel. Co. v. Commonwealth, 266 S.W.2d 308 (Ky.1954); Public Water Supply Dist. No. 2 *922 v. State Highway Comm'n, 244 S.W.2d 4 (Mo.1951); New York City Tunnel Auth. v. Consolidated Edison Co. of N.Y., Inc., 295 N.Y. 467, 68 N.E.2d 445 (1946)); Baltimore Gas & Elec. Co. v. State Roads Comm'n, 214 Md. 266, 134 A.2d 312, 313 (1957) ("Unless the Legislature directs to the contrary, the rule is that a public utility must, at its own expense, remove and relocate its service facilities in, on or under a public road or other land owned by the State if this is made necessary by improvement or extension of the road system.").
The current version of RCW 36.55.060 not only codified, but made explicit, the common law rule. I am unpersuaded by the short shrift the majority gives RCW 36.55.060(4) that the common law, and later statutory, rule does not apply in this case.
Having disregarded the plain language of RCW 36.55.060(4), the majority looks elsewhere for any legal authority the PUD may claim for its actions. Vexingly, it finds none in the statute books or the common law. It reaches its decision that the PUD may pass on relocation costs to Sundquist "despite the fact that there is no statutory provision directly addressing the PUD's authority" to do just that. Majority at 918. Rather the majority infers the authority "from several aspects of the PUD's proprietary authority, i.e., its powers to contract, set rates, and maintain facilities." Id. However the power to set rates is the power to set rates for electrical consumerscost-shifting to adjacent private property owners is not "rate-setting," nor is this claimed to be a connection charge having anything to do with charging a customer for services rendered.
While PUDs "cannot exercise powers except those expressly granted, or those necessarily 918 (quoting Pacific First Fed. Sav. & Loan Ass'n v. Pierce County, 27 Wash.2d 347, 353, 178 P.2d 351 (1947)), one searches in vain the granted powers specified by the majority, namely those found in RCW 54.24.080 and 54.16.040, to find any statutory basis for the cost-shifting the PUD undertakes, or that it is "necessarily implied" by these statutorily granted powers. It is simply too great a leap from the express grants of these statutes of powers to maintain utilities and charge for utility consumption, to "by implication, the power to charge private developers, such as Sundquist, for the costs of relocation in order to ensure that the PUD's `system [is] efficient and beneficial to the public.'" Majority at 919 (quoting Hite v. Public Util. Dist. No. 2, 112 Wash.2d 456, 458, 772 P.2d 481 (1989)).

Primary Beneficiary of Utilities Relocation
Although ultimately irrelevant to the legal question this case presents, it is important to the majority, at pages 916-918, as it was important to the Court of Appeals, Sundquist Homes, Inc. v. Snohomish County Pub. Util. Dist. No. 1, 92 Wash.App. 950, 956-57, 965 P.2d 1148 (1998) and 92 Wash.App. at 957, 965 P.2d 1148 (Grosse, J., concurring), whether, as a factual matter, the primary benefit of facilities relocation in this case was to the public, or to Sundquist homes, a private party. Both assumed the latter: Majority at 917 ("Like the other services, each of the utility facility relocations was necessitated by Sundquist's development plans."); Sundquist, 92 Wash.App. at 957, 965 P.2d 1148 ("The main benefit was that Sundquist became entitled to proceed with its plats.").
However this analysis is incorrect, and to counter the pull of any emotional gravity it has toward the majority's result, its falsity merits amplification. As the majority points out, Snohomish County routinely conditions approval of plat development upon improvement of adjacent county roads. Majority at 916. These improvements generally involve widening the roads to facilitate general traffic flow. Widening roads frequently necessitates relocating public utilitiespoles and wiresoff the traveled portion of the widened road. What is left after the road improvement is: wider roads, correctly and efficiently located public utility poles, and adjacent private property. But relocation of the utilities is a systemwide change; it does not uniquely benefit adjacent private development, nor does it indirectly benefit adjacent private property. These widened roadways are not for private use; it is not as if these improved *923 roadways were Sundquist's private driveways. Therefore the cost is rightly borne by the utility district rate payers as a whole and should not logically be discriminatorily imposed on those who happen to own adjacent property any more than the original installation of power transmission lines may be taxed to adjacent private property owners.
Moreover RCW 36.55.060 simply does not have a private-public benefit analysis built into it, and even if there were private benefit there still would be no lawful statutory authority to shift the cost. To the extent PUD Resolution 2751 conflicts with the statute, it is void. The issue of who primarily benefits from the utility relocation is therefore irrelevant to the statutory analysis. The only explicit statutory requirement is that the utility relocation be "reasonably necessary for the construction, alteration, or improvement" of county roads, RCW 36.55.060(4), which it is.
Widening these county roads necessitated this utility pole relocation. These roads are maintained for the public as a whole. The increased use of these public roads by improving adjacent property is incidental, if not de minimus.

Conclusion
The chasm over which the majority must leap from premise to conclusion is the common law rule described above, and its extension through the plain language of RCW 36.55.060(4). The judiciary is not at liberty to infer municipal powers so broad they justify disregard of legislative mandates and abrogation of common law norms. Given the legal realities of the situation, the trial court and Court of Appeals erred in granting and upholding summary judgment to the PUD, and I would reverse.
MADSEN and IRELAND, JJ., concur.
NOTES
[1] All of the named plaintiffs are hereinafter collectively referred to as "Sundquist."
[2] These services included, for example, an electrical underground system with street lighting, road crossings, removal of overhead line, and installation of underground service to another plat.
[3] A fair portion of Sundquist's briefing on this is devoted to addressing the merits of an unpublished opinion from Division Two of the Court of Appeals. We decline to consider that opinion since unpublished cases cannot be cited as authority under RAP 10.4(h).
[4] RCW 36.70A.020 states, in pertinent part:

"The following goals are adopted to guide the development and adoption of comprehensive plans and development regulations of those counties and cities that are required or choose to plan under RCW 36.70A.040. The following goals are not listed in order of priority and shall be used exclusively for the purpose of guiding the development of comprehensive plans and development regulations:
"....
"(4) Housing. Encourage the availability of affordable housing to all economic segments of the population of this state, promote a variety of residential densities and housing types, and encourage preservation of existing housing stock."