Honorable Andrew Miller Benton County Prosecutor 7320 West Quinault Kennewick, WA 99336-7693
Honorable Janice Ellis Snohomish County Prosecutor 3000 Rockefeller Avenue Everett, WA 98201-4046
Dear Prosecutors Miller and Ellis:
By letter previously acknowledged, you have requested our opinion on a question we have paraphrased as follows:
Under RCW 9.02.110 and 9.02.120, is it unlawful for an AdvancedRegistered Nurse Practitioner (ARNP) to prescribe or furnish a drug to awoman upon her request for the purpose of terminating pregnancy, wherethe ARNP is acting in all respects within the terms of his or herprofessional license but is not acting under the supervision of aphysician?
 BRIEF ANSWER
We answer your question in the negative. RCW 9.02.110 and .120 should not be read to make it unlawful for a health care provider, acting within the terms of his or her professional license, to perform acts or procedures which will have the effect of terminating a woman's pregnancy where the purpose of the acts or procedures is to exercise the woman's constitutional and/or statutory right to terminate the pregnancy. Applying principles of statutory construction, we conclude that the prohibitions in RCW 9.02.120 do not apply to ARNPs acting within the scope of their professional practice, because subsequent legislation has created ARNPs as a new type of health care professional and has expanded the scope of their professional practice to include the authority to prescribe legend drugs.
 ANALYSIS
A. Washington's Abortion Law: The Statutory Background
Washington's laws on the subject of abortion are codified in RCW 9.02 and were adopted by the people as Initiative Measure No. 120 in the 1991 general election. Laws of 1992, ch. 1 (Initiative Measure No. 120, approved November 5, 1991).[1] The initiative begins with a declaration that "every individual possesses a fundamental right of privacy with respect to personal reproductive decisions." RCW 9.02.100. Another provision is that "any regulation promulgated by the state relating to abortion shall be valid only if" it meets three requirements: (1) it is medically necessary to protect the life or health of the woman terminating her pregnancy, (2) the regulation is consistent with established medical practice, and (3) the regulation imposes the least possible restrictions on the woman's right to have an abortion. RCW9.02.140.
With these policy statements as background, RCW 9.02.110 provides as follows:
 The state may not deny or interfere with a woman's right to choose to have an abortion prior to viability of the fetus, or to protect her life or health.
 A physician may terminate and a health care provider may assist a physician in terminating a pregnancy as permitted by this section.
A companion section prohibits abortions not performed consistently with these provisions:
 Unless authorized by RCW 9.02.110, any person who performs an abortion on another person shall be guilty of a class C felony punishable under chapter 9A.20 RCW.
RCW 9.02.120. The language of these two sections gives rise to your question.
B. Changes In Medical Practice Since 1991
In 1991, when Initiative Measure No. 120 was enacted, the only forms of pregnancy termination recognized to be safe and effective were surgical procedures. Only licensed physicians were authorized to perform surgery of this nature, although other health care professionals such as nurses could lawfully assist physicians.[2] This situation is directly reflected in the language of RCW 9.02.110 providing that a "physician may terminate and a health care provider may assist a physician in terminating a pregnancy as permitted by this section."
According to materials we have examined in researching your request, this situation changed significantly, beginning in 2000. There are now drugs federally approved and legally available which, when injected or ingested, induce pregnancy termination without the necessity for a surgical procedure. It is unquestionably within the scope of a physician's practice of medicine to prescribe or furnish such drugs to a woman seeking an abortion. RCW 18.71.011(2) (authority of physician to prescribe drugs). A plain and straightforward reading of RCW 9.02.110
clarifies that a physician could lawfully perform either a "surgical" or a "medical" abortion for a woman seeking such a procedure to terminate a pregnancy prior to viability of the fetus, or to protect the woman's life or health, and that other health care professionals could assist the physician in such a procedure.
However, as your request also points out, the state now recognizes a new category of health care professional with a scope of practice that overlaps in certain ways the "practice of medicine" that was once reserved to licensed physicians. In Laws of 1994, 1st Sp. Sess., ch. 9, the Legislature reorganized its laws relating to the licensing and regulation of health care professionals and created a category of "advanced registered nursing practice" defined as "the performance of the acts of a registered nurse and the performance of an expanded role in providing health care services as recognized by the medical and nursing professions, the scope of which is defined by rule by the commission." RCW18.79.050.[3] Advanced registered nursing practitioners (ARNPs) are expressly authorized to prescribe legend drugs and certain controlled substances. Id.[4]
Thus, it appears that so far as the scope of their professional practice as defined in RCW 18.79 and in commission rules is concerned, ARNPs would have full authority to prescribe drugs to be taken for the purpose of inducing abortions. However, the language of RCW 9.02.110
states that "a physician may terminate" and that "a health care provider may assist a physician" in terminating a pregnancy. Your question is whether this language operates to prohibit ARNPs from prescribing such drugs, except when they are "assisting a physician," or whether the subsequent legislation expanding the professional practice makes these provisions inapplicable to an ARNP acting within the terms of his or her professional license.
C. Principles Of Statutory Interpretation
In answering your question, we turn to the principles courts have developed in deciding how to interpret statutory law. When provisions of different statutes relating to the same subject matter conflict, the courts will resolve the conflict using settled rules of interpretation. The overall purpose of statutory interpretation is to ascertain and carry out the Legislature's [and in the case of an initiative, the people's] intent in creating the statute. State v. Watson, 146 Wn.2d 947, 51 P.3d 66
(2002).[5] Statutes are to be construed to effect their purposes, and to avoid an unlikely or strained consequence. Sundquist Homes, Inc. v.Snohomish Cy. Pub. Util. Dist. 1, 140 Wn.2d 403, 997 P.2d 915 (2000). Courts sometimes say that a statute that is "clear on its face" is not subject to judicial construction, and courts must give effect to its meaning as an expression of legislative intent. See, e.g., In reAlbrecht, 147 Wn.2d 1, 51 P.3d 73 (2002). In a recent thoughtful analysis of the question of determining when a statute is ambiguous, and not "clear on its face", the Supreme Court concluded that this analysis derives the meaning of a statute from "all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." Ecology v. Campbell Gwinn,L.L.C., 146 Wn.2d 1, 11, 43 P.3d 4 (2002).
A reading of RCW 9.02.110 and .120 in isolation, without considering how they relate to other statutes on the subject, could lead to the conclusion that "health care professionals" other than physicians may assist physicians in performing abortions but may not lawfully undertake these procedures other than under the supervision of a physician. The primary difficulty with this reading is that it proceeds to its conclusion without considering "all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." Campbell Gwinn, 146 Wn.2d at 11. An examination of Initiative 120's legislative intent rapidly dispels the notion that the initiative was intended as a permanent restraint on the scope of practice of ARNPs (a category of health care professional which, as noted earlier, did not exist when Initiative 120 was adopted).
We note, first of all, the opening language of RCW 9.02.110 itself that the "state may not deny or interfere with a woman's right to choose to have an abortion prior to viability of the fetus, or to protect her life or health." The initiative opens with a statement of policy that "[e]very woman has the fundamental right to choose or refuse to have an abortion". RCW 9.02.100(2). Furthermore, the initiative also contains language requiring that the state impose "the least restrictions on the woman's right to have an abortion" of the available alternatives. RCW9.02.140(3). It would be inconsistent with these statements of intent to read RCW 9.02.110 as "freezing" the scope of practice of health care professionals in such a way as to make it more difficult for a woman to obtain an abortion in those circumstances where she is constitutionally and statutorily entitled to do so.
The clear implication of all this language is that the primary purpose of Initiative 120 was to establish that abortion will be available in Washington to any woman who chooses to terminate a pregnancy either (1) prior to viability of the fetus, or (2) for the purpose of protecting the woman's life or health. RCW 9.02.120 was included in the initiative for a related purpose to protect women from unsafe abortions performed by persons not licensed to perform them.[6] Initiative 120 failed to foresee that the scope of practice of certain health care professionals and the nature of abortion procedures would change over time. However, the initiative statements of intent and the priorities established in the initiative measure's text provide the polestar for construing the language of RCW 9.02.110 and .120 together with these later enactments.
Applying principles of statutory construction and considering the legislative intent, we conclude that the prohibitions in RCW 9.02.120 do not apply to ARNPs acting within the scope of their professional practice. As explained below, when two statutes conflict, the more recent legislation will usually control. To the extent there is a conflict, a later enactment may be deemed to be an exception to a general rule enunciated in the former statute. Here, where subsequent legislation has created ARNPs as a new type of health care professional and has expanded the scope of their professional practice to include the authority to prescribe legend drugs, application of these principles leads to the conclusion that prescription of legend drugs by an ARNP pursuant to RCW18.79.050 is an exception to the prohibition of RCW 9.02.120. Testing this conclusion against legislative intent, this conclusion is consistent with the purpose of recognizing "the fundamental right to choose or refuse to have an abortion" (RCW 9.02.100(2)) and to place "the least restrictions on the woman's right to have an abortion". RCW 9.02.140(3). Indeed, interpreting the measure as barring such procedures seems an "unlikely or strained consequence", certainly anomalous in light of the initiative's obvious purpose.[7]
Principles of statutory construction provide that to the extent statutes on a subject conflict, the more recent enactment will usually prevail:
 If there is an irreconcilable conflict between the new provision and the prior statutes, the new provision will control as it is the later expression of the legislature.
3 Norman J. Singer, Sutherland on Statutes and Statutory Construction
§ 51.02, at 194 (6th ed. 2001). See also Junkin v. Anderson,12 Wn.2d 58, 120 P.2d 548 (1941). A conflict between two statutory provisions will be resolved by giving effect to the more recently enacted statute.[8] See also State v. J.P., 149 Wn.2d 444, 69 P.3d 318 (2003).Accord AGO 1998 No. 13. Additionally, a later enactment may be deemed to be an exception to a general rule enunciated in a former statute. 3 Singer, supra, § 51.02, at 187.
Here, the most sensible reading is that the 1991 statute was merely intended to reflect existing practice as to which health care professionals were authorized to perform certain procedures, and not specifically to define the licensing limits of various professions in an enactment that otherwise does not cover this subject. By contrast, the 1994 amendments, as implemented by agency rules, clearly do expand the scope of practice. These changes should be read as impliedly amending RCW9.02.120 to the extent the earlier statute inconsistently defines the scope of professional practice for ARNPs. See In Re Chi-Dooh Li,79 Wn.2d 561, 488 P.2d 259 (1971).
We note that RCW 9.02.120 is a statute establishing criminal penalties. Penal statutes are strictly construed in favor of a defendant prosecuted under the statute. State v. Lively, 130 Wn.2d 1, 921 P.2d 1035
(1996). In light of the fact that allowing an ARNP to perform the full range of health care services authorized under RCW 18.79.050 "imposes the least restrictions" on the woman's right to have an abortion as called for in RCW 9.02.140, and given that the availability of such procedures to women would further the evident primary purpose of Initiative 120, we think it is highly unlikely that courts would interpret RCW 9.02.110 and .120 to make such a procedure a felony.
We also note that a contrary interpretation would raise certain constitutional issues. If a statute regarding the ability of a health professional to administer drugs cannot be sustained as a health measure, but only because of the fact the individual is exercising a constitutional right to privacy, the statute could subject to challenge as unwarranted governmental intrusion into a person's right to decide whether to bear or beget a child. See Eisenstadt v. Baird, 405 U.S. 438,92 S.Ct. 1029, 31 L.Ed.2d 349 (1972) (holding unconstitutional a state law prohibiting the distribution of contraceptives to single persons, but not to married persons, since this uneven application demonstrated the law was not a measure designed to protect public health). To be upheld, a legislative scheme that involves differential treatment of the prescription of drugs would need to be based on a need to protect the health of the person receiving the drugs and not on the fact that the result of taking the drugs is pregnancy termination. Here, there is no indication the Legislature intended to exclude the prescription of drugs for pregnancy termination for purposes of protecting public health. RCW18.79.010 states that the rules, policies, and procedures developed by the commission must promote the delivery of quality health care. Therefore, based on the current legislative scheme, the Legislature will be presumed to have intended a meaning consistent with the constitutionality of its enactment and thus to include within the scope of the professional practice of an ARNP the prescription of legend drugs without regard to whether the purpose of those drugs is pregnancy termination. See State ex rel. Dawes v. Wash. State Highway Comm'n,63 Wn.2d 34, 38, 385 P.2d 376 (1963) ("If a statute is subject to two interpretations, one rendering it constitutional and the other unconstitutional, the Legislature will be presumed to have intended a meaning consistent with the constitutionality of its enactment.").
Accordingly, although clarification of the point by legislative amendment would be ideal, we conclude that your question should be answered in the negative.
We trust the foregoing will be useful.
Very truly yours,
 JAMES K. PHARRIS Senior Assistant Attorney General
[1] Initiative 120, in turn, builds on what the Supreme Court has declared to be a federal constitutional right to have an abortion in the early stages of pregnancy. Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705,35 L.Ed.2d 147 (1973).
[2] For purposes of this discussion, the term "physician" means someone licensed to practice medicine as defined in RCW 18.71.
[3] The "commission" here is the state nursing care quality assurance commission. RCW 18.79.020(1).
[4] For the purposes of discussion, we assume that an ARNP is furnishing or prescribing drugs which an ARNP is authorized to prescribe or furnish to a patient, without physician supervision, as the scope of practice of that profession is defined by the statutes and by commission rules.
[5] The rules of construction apply equally to initiative measures approved by the people. Amalgamated Transit Union Local 587 v. State ofWash., 142 Wn.2d 183, 205, 11 P.3d 762 (2000) (citations omitted).
[6] This point is clarified by the arguments contained in the Voters Pamphlet on Initiative 120. The "statement for" the measure include as a key provision that the measure "[e]nsures safe abortions by prohibiting abortions outside the provisions of this [i]nitiative." Voters Pamphlet 14 (1991). In that same vein, the statement indicates that the measure "allows only physicians to perform abortions". Id. In their "statement against" the measure, its opponents asserted that Initiative 120 would allow "unqualified personnel to participate in abortion services." Id. at 15. All the remaining discussion in the pamphlet, including the statements for and against the measure, concerns the effect of the measure on a woman's right to choose abortion and whether the measure's expanded protection of this right would or would not be warranted. Id. Neither the proponents nor the opponents suggest that the measure's primary purpose would include limiting the scope of practice for health care professionals.
[7] We are aware that one purpose of Initiative 120 was to protect the health and safety of women by assuring that only properly trained and licensed professionals would be authorized to perform abortion procedures. This is undoubtedly why RCW 9.02.110 limited abortion practice to licensed physicians. We must assume, however, that in authorizing ARNPs to prescribe and furnish drugs, and otherwise to engage in professional practices once limited to physicians, the Legislature has exercised the judgment that ARNPs have been properly trained to practice their profession without jeopardizing the health of their patients. Thus, given the stated purposes of Initiative 120, we conclude that these purposes are fulfilled by allowing ARNPs to practice their professions as defined and regulated by statute and rule.
[8] The later enactment may not prevail if the language of the earlier provision is clearly the more explicit treatment of the particular issue.See State v. Landrum, 66 Wn. App. 791, 832 P.2d 1359 (1992). Here, however, we cannot say that the earlier provision is the more specific.